Mark C. JACKSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 07–713 C.

United States Court of Federal Claims.

Feb. 27, 2008.

Mark C. Jackson, Starke, Florida, pro se.

Dawn E. Goodman, Trial Attorney, Todd M. Hughes, Deputy Director, Jeanne E. Davidson, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This action is before the Court on plaintiff's application to proceed *in forma pauperis* ("Pl.'s Application," docket entry 2); defendant's motion for summary dismissal for lack of jurisdiction over the subject matter of plaintiff's claims ("Def.'s Mot. Dismiss," docket entry 5); plaintiff's response to defendant's motion to dismiss ("Pls.' Response," docket entry 6); defendant's reply in support of its motion to dismiss ("Def.'s Reply," docket entry 7); and plaintiff's surreply to defendant's reply ("Pls.' Surreply," docket entry 8). For the reasons discussed below, defendant's motion is **GRANTED.**

## BACKGROUND

The following facts, taken from plaintiff's complaint and its attachments, are presumed true for the purpose of deciding defendant's motion to dismiss. *See Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (stating that decisions on such motions to dismiss rest "on the assumption that all the allegations in the complaint are true"); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002); *Gould Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991); *Kawa v. United States,* 77 Fed.Cl. 294, 298 (2007); *Barth v. United States,* 28 Fed.Cl. 512, 514 (1993).

### I. Mr. Jackson's Medical and Career Problems

On July 6, 1996, plaintiff Mark C. Jackson had reconstructive surgery on the arch of his right foot. Complaint ¶ 1, Ex. 1. During recovery from this surgery, Mr. Jackson acquired an infection and suffered complications from the antibiotics used to treat that infection. Complaint ¶ 2. Because of the infection and complications, Mr. Jackson was

unable to work until July 21, 1997. Complaint ¶ 3.

On July 21, 1997, Mr. Jackson was hired by C–COR.net as a Senior Technician. Complaint ¶ 5. He moved from this job to a position with Worldbridge Broadband Services on December 18, 2000. Complaint, Ex. 3. Mr. Jackson's employment with Worldbridge was terminated on June 2, 2001, for lack of performance. Complaint, Ex. 3.

On October 10, 2003, Mr. Jackson had a second surgery, this time on his right ankle. Complaint ¶ 12, Exs. 6–8. Because of his recovery from this surgery, Mr. Jackson was apparently unable to work during 2004. Complaint, Ex. 9. Although Mr. Jackson's complaint itself is not crystal clear on the point, it appears from his application to proceed *in forma pauperis* that Mr. Jackson has not been employed since June 2, 2001. *See infra* pp. 563–64.

## II. Mr. Jackson's Social Security Claims

On November 12, 1999, while Mr. Jackson was working at C–COR.net, he filed a claim with the Social Security Administration ("SSA") for disability benefits for the period from July 6, 1996, to July 21, 1997, when he had been convalescing from his first surgery. Complaint, Ex. 2. This disability claim was rejected initially and on reconsideration. *Id.* On April 11, 2000, Mr. Jackson asked to have an administrative law judge at the SSA review the claim. *Id.* The administrative law judge held a hearing, at which Mr. Jackson was present, on September 22, 2000. *Id.* On December 28, 2000, the administrative law judge denied Mr. Jackson's disability claim and notified Mr. Jackson of his right to appeal to the SSA Appeals Council any time

within 60 days of receiving the notification of the administrative law judge's decision. *Id.* Despite this notice, Mr. Jackson did not pursue an appeal of his disability claim to the Appeals Council, but instead tried to reopen his claim at some point; his untimely request was denied by SSA on April 23, 2003. Complaint ¶ 10. On May 5, 2003, Mr. Jackson requested that SSA reconsider its April 23, 2003 decision, but he apparently sent this request to the incorrect address. Complaint ¶ 11.

On February 9, 2005,[1] Mr. Jackson filed a second SSA claim for disability benefits, this time for the period beginning June 2, 2001, and running to the present. Complaint ¶ 14, Ex. 11. On April 17, 2005,[2] this disability claim was initially denied. Complaint ¶ 17, Ex. 11. On October 28, 2005, the disability claim was also denied on reconsideration. Complaint ¶ 18, Ex. 11. On November 17, 2005,[3] Mr. Jackson requested that his disability claim be heard by an administrative law judge. Complaint ¶ 19, Ex. 11. On February 3, 2007, Mr. Jackson submitted a brief to assist the administrative law judge's decision. Complaint ¶ 20. The administrative law judge held a hearing on Mr. Jackson's claim on February 27, 2007. Complaint ¶ 20, Ex. 11. At Mr. Jackson's request, Mr. Jackson was not present at this hearing. Complaint, Ex. 11. On May 17, 2007, the administrative law judge rendered a decision adverse to Mr. Jackson. Complaint ¶ 20, Ex. 11. On May 21, 2007, Mr. Jackson appealed the administrative law judge's decision to the SSA Appeals Council. Complaint ¶ 21. Although Mr. Jackson's filings did not indicate whether the Appeals Council had acted on his appeal, the Court confirmed that Mr. Jackson's ap-

1. There is a conflict between the complaint and its exhibits regarding the date Mr. Jackson's second SSA disability claim was filed. Exhibit 11 states that the claim was filed January 28, 2005, while paragraph 14 of the complaint states that the second claim was filed February 9, 2005. The Court has used the date set forth in paragraph 14 of the complaint. Use of the date from Exhibit 11 would not affect the outcome of this proceeding.

2. There is also some question as to the date when Mr. Jackson's second SSA claim was initially denied. The Court has used the date of April 27,

2005, which is stated in the complaint, rather than the date of April 25, 2005, stated in Exhibit 11 to the complaint. As noted above, use of the date from the exhibits to the complaint would not affect the outcome.

3. The complaint and exhibits also disagree about the date on which Mr. Jackson requested review of his second SSA claim by an administrative law judge. Again, the Court has used the date in the complaint, November 17, 2005, rather than the date given in the exhibits to the complaint, November 18, 2005. Once again, choosing the alternative date would not change the result.

peal remained pending before the Appeals Council as of the mid-February 2008.

### III. Mr. Jackson's Veterans Affairs Claims

Although he does not explicitly so state in his complaint, it appears that Mr. Jackson is a veteran. He contends that the disabilities for which he has made SSA claims are related to his military service. Complaint ¶ 22. Mr. Jackson claims to be eligible for Veterans Individual Unemployability benefits through the Department of Veterans Affairs, and he claims that he has not received the payments to which he is entitled under this benefit program. Complaint ¶¶ 14, 25.

In addition, although Mr. Jackson does not state when he applied for vocational rehabilitation benefits at the Department of Veterans Affairs, he claims that the Department "maliciously postponed drawing up a [vocational rehabilitation] plan for over two years." Complaint ¶ 15. It appears that the rehabilitation plan in question was drawn up on January 3, 2005. Complaint, Ex. 9.

Finally, Mr. Jackson complains about the denial by the Department of Veterans Affairs on March 26, 2007, of vocational rehabilitation services.[4] Complaint ¶ 16, Ex. 10. Mr. Jackson contends that this denial of services was impermissibly based on his "standing up for our [sic] right to due process in traffic court." Complaint ¶ 16.[5] Mr. Jackson's complaint does not contain any information regarding whether he has appealed the denial of veterans benefits to the Board of Veterans' Appeals within the Department of Veterans Affairs; if so, whether a decision has been rendered by the Board; if so, whether Mr. Jackson has appealed that decision to the Court of Appeals for Veterans Claims;

or, if so, whether that court has rendered any decision.[6]

### *PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS*

█ Along with his complaint, Mr. Jackson filed an application to proceed *in forma pauperis*. In order to do so, 28 U.S.C. § 1915(a)(1) requires that Mr. Jackson "submit[ ] an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay [filing] fees or give security therefor. Such affidavit shall state the nature of the action . . . and affiant's belief that the person is entitled to redress." "When considering a motion filed pursuant to § 1915(a), ['[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty.'" *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir.2004) (citation omitted). In Mr. Jackson's application, he attests that he has not been employed since June 2, 2001; that his only assets are a bank account containing less than $200 and a one-half ownership interest in his home; and that his only income in the last twelve months was "pennies in interest" on his bank balance. Given these statements, the Court finds that payment of the court's filing fee would cause a substantial financial hardship to Mr. Jackson, and he is therefore financially eligible to proceed *in forma pauperis*. In addition, Mr. Jackson's application states the nature of the action and his belief that he is entitled to redress: "I am entitled to Social Security Insurance and corresponding Veterans Affairs Benefits and lost wages as setout [sic] in my complaint." Pl.'s Application at 1. Thus, Mr.

---

4. As discussed below, Mr. Jackson argues that the denial of vocational rehabilitation services constituted a breach of a contract implied in fact. The Court has considered the claim arising from the denial of rehabilitation services both as a veterans benefits claim and as a claim for breach of contract.

5. Again, defendant apparently disagrees with Mr. Jackson's account, and Exhibit 10 to the complaint, an excerpt from a letter apparently from the Department of Veterans Affairs to Mr. Jackson, dated March 27, 2006, contains a different

statement of the reasons the Department of Veterans Affairs gave for denying Mr. Jackson continuing vocational rehabilitation services. For the purpose of this motion, the Court assumes that Mr. Jackson's account is correct.

6. Although Mr. Jackson's complaint does not describe the status of his appeal of his veterans benefits claim, his opposition to the motion for summary dismissal makes clear that his appeal is currently pending before the United States Court of Appeals for Veterans Claims. Pl's. Opp. 2.

Jackson's application meets the formal requirements for proceeding *in forma pauperis*. The Court therefore holds that Mr. Jackson is entitled to proceed without paying fees in this action.

### DISCUSSION

The pleadings of *pro se* litigants are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even given this considerable leeway, however, *pro se* plaintiffs must still meet the same jurisdictional requirements that all plaintiffs must meet before being allowed to proceed with a claim in this Court. *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995) ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). Specifically, a plaintiff must "establish[ ] subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). Here, even when his complaint is interpreted as broadly as his *pro se* status will allow, Mr. Jackson has failed to establish this Court's jurisdiction over any of the claims that may reasonably be inferred from his complaint.

**I. The Court Does Not Have Subject Matter Jurisdiction over Mr. Jackson's Claims for Social Security Benefits, and There Is No Basis to Transfer Those Claims to the District Court at this Time.**

■ Mr. Jackson asserts two separate claims for social security benefits. First, he filed a claim with SSA in November 1999. This claim was decided adversely to Mr. Jackson by an administrative law judge in December 2000, and Mr. Jackson never timely appealed to the SSA Appeals Council. Second, Mr. Jackson filed a separate claim with SSA in February 2005. Mr. Jackson appealed the adverse decision of the administrative law judge in this second claim to the Appeals Council in May 2007, and the Appeals Council has not yet rendered a decision.

The United States Court of Federal Claims, as with all federal courts, is a court of limited jurisdiction. The Court is vested with the power to hear and decide only certain types of claims. These do not include claims for social security benefits. Instead, the United States Code provides only a single avenue for judicial review of decisions of the Social Security Administration: a suit in United States District Court. 42 U.S.C. § 405(h) ("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner for Social Security ..., may obtain a review of such decision by a civil action.... Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides...."). Because of these statutes, the United States Court of Appeals for the Federal Circuit, which reviews decisions of this Court, has consistently held that the Court of Federal Claims cannot hear and decide claims for social security benefits. *See, e.g., Marcus v. United States,* 909 F.2d 1470, 1471 (Fed.Cir.1990). The Court therefore holds that it does not have subject matter jurisdiction to hear and decide Mr. Jackson's claims for social security benefits.

■ If Mr. Jackson's mistake were merely filing his complaint in the incorrect forum, the Court would be inclined to transfer his claim for social security benefits to the proper United States District Court. Such a transfer would be authorized by 28 U.S.C. § 1631, which provides, "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought...." However, it would not be in the interest of justice to transfer Mr. Jackson's social security claim to the district court at this time. In order to transfer a claim from this Court to a United States District Court, the court to which the claim would be transferred must have jurisdiction to hear and decide the claim. For this rea-

son, transfer under 28 U.S.C. § 1631 has been denied when, for example, the plaintiff has failed to exhaust administrative remedies that must be exhausted before the transferee court could hear the claim. *Ace Property & Cas. Ins. Co. v. United States,* 60 Fed.Cl. 175, 187 (2004). Such is the case with respect to Mr. Jackson's second claim for social security benefits, filed February 9, 2005.

Because Mr. Jackson has not yet exhausted the administrative remedies available within SSA with respect to his second social security benefits claim, his request for judicial review of that claim is premature at this point. When an adverse decision by an SSA administrative law judge has been appealed to the Appeals Council, the district courts are without jurisdiction to review the claim until the Appeals Council has rendered a decision.[7] *Hunt v. United States Air Force,* 848 F.Supp. 1190, 1193 (E.D.Pa.1994). Because a district court would therefore lack jurisdiction to review Mr. Jackson's second social security claim at this point, transfer of that claim pursuant to 28 U.S.C. § 1631 would be inappropriate. Should the Appeals Council ultimately decide against Mr. Jackson, he will have 60 days from that point to file a complaint in the appropriate district court for review of the decision.[8] For now, his second claim cannot be heard by this Court or by the district court.

The lack of jurisdiction of the district courts is even more profound with respect to Mr. Jackson's first social security claim, filed November 12, 1999. "To secure judicial review ..., [Mr. Jackson] should have requested review of the Administrative Law Judge's

... decision by the Appeals Council and, if that body decided adversely to him, he then should have commenced a civil action within sixty days of the mailing to him of notice of that final decision." *LeJeune v. Matthews,* 526 F.2d 950, 952 (5th Cir.1976). Having failed to appeal the decision of the administrative law judge to the Appeals Council, Mr. Jackson now has no right to pursue judicial review of that decision in any court, so transfer of that claim to any district court pursuant to 28 U.S.C. § 1631 would be inappropriate.

Mr. Jackson therefore has failed to exhaust his administrative remedies within the SSA with respect to each of his claims for social security benefits, so no district court currently has jurisdiction to hear those claims. Because this Court lacks jurisdiction to hear and decide Mr. Jackson's social security claims, and because no district court currently has jurisdiction to hear his social security claims, those claims must be dismissed.

## II. The Court Does Not Have Subject Matter Jurisdiction over Mr. Jackson's Claim for Veterans Benefits.

■ Similar problems affect Mr. Jackson's claim for benefits from the Department of Veterans Affairs when that claim is treated as a direct claim for denial of veterans benefits.[9] Under 38 U.S.C. § 511, "The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secre-

---

7. Mr. Jackson attempts to declare his social security claim a deemed denial because it has been pending for over six months. Complaint ¶ 2. It is unclear whether Mr. Jackson intends to declare a deemed denial for his first social security claim, for his second social security claim, or for both. The Court therefore presumes that Mr. Jackson intended to refer to his second social security claim, which is still pending, rather than to his first social security claim, which, as noted, expired when Mr. Jackson failed to pursue his appeal to the SSA Appeals Council. In either case, Mr. Jackson's attempt to declare a deemed denial is ill-founded. It is possible to deem certain claims against the United States final denials under 28 U.S.C. § 2675(a), but such a course of action is limited to claims asserted under the Federal Tort Claims Act.

8. Based on the address Mr. Jackson listed on his complaint, it appears that the appropriate district court would be the United States District Court for the Middle District of Florida. The closest courthouse to Mr. Jackson's address appears to be located at 300 North Hogan Street, Jacksonville, Florida.

9. Mr. Jackson presents two possible claims arising from the denial of veterans benefits. In addition to a direct claim for denial of the benefits, discussed here, Mr. Jackson also argues that the denial gives rise to a breach-of-contract claim. The claim for breach of contract is discussed below.

tary to veterans or the dependents or survivors of veterans.... [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." Because of this statute, the Court of Federal Claims has repeatedly held that it has no jurisdiction to hear claims for denial of veterans benefits. *See, e.g., Ferreiro v. United States,* 72 Fed.Cl. 1, 6 (2006); *Van Allen v. United States,* 66 Fed.Cl. 294, 296 (2005). Instead, "[a]ppeals from VA local offices lie with the Board of Veterans Appeals. The Court of Appeals for Veterans Claims has exclusive jurisdiction to review decisions of the Board of Veterans Appeals under 38 U.S.C. § 7252(a) (2000). Finally, appeals from that court are within the exclusive jurisdiction of the United States Court of Appeals for the Federal Circuit." *Van Allen,* 66 Fed.Cl. at 295–96. The Court of Federal Claims therefore has no jurisdiction to hear Mr. Jackson's claim for veterans benefits.

■ Were the Court to transfer Mr. Jackson's veterans benefits claim to a court with jurisdiction under 28 U.S.C. § 1631, it would have three potential choices: the Board of Veterans' Appeals, the Court of Appeals for Veterans Claims, or the United States Court of Appeals for the Federal Circuit. Given the facts of Mr. Jackson's case, though, none of these is actually an authorized transferee forum. The Board of Veterans' Appeals is an administrative agency within the Department of Veterans Affairs, and 28 U.S.C. § 1631 does not permit transfer from this Court (or any court) to an administrative agency. *Schafer v. Dep't of Interior,* 88 F.3d 981, 987 (Fed.Cir.1996); *Amos v. United States,* 22 Cl.Ct. 724, 733–34 (1991). Further, while the Court of Appeals for Veterans Claims is an Article I court rather than an administrative agency, 38 U.S.C. § 7251, it is not a "court" within the meaning of 28 U.S.C.

§ 1631.[10] Thus the court cannot transfer Mr. Jackson's claim to the Court of Appeals for Veterans Claims any more than it could transfer the claim to an administrative agency.

■ Given that the complaint does not indicate that Mr. Jackson has exhausted his administrative remedies, the Court also cannot transfer Mr. Jackson's veterans benefits claim to the United States Court of Appeals for the Federal Circuit, because that court could not exercise jurisdiction over Mr. Jackson's claims until he had exhausted his administrative remedies. *Alvarez v. United States,* 9 Cl.Ct. 311, 312 (1985). Because the Court cannot transfer Mr. Jackson's veterans benefits claim to any other tribunal, and because the Court lacks jurisdiction to hear and decide Mr. Jackson's veterans benefits claim, that claim must be dismissed pursuant to RCFC 12(b)(1). Mr. Jackson should finish pursuing his appeal to the Court of Appeals for Veterans Claims. Once that appeal has been decided, if Mr. Jackson remains dissatisfied with the result, he may take an appeal to the United States Court of Appeals for the Federal Circuit.

### III. Mr. Jackson's Breach–of–Contract Claim Is in Effect a Claim for Veterans Benefits, over Which the Court Has No Jurisdiction.

■ In an effort to keep his veterans benefits claim from being dismissed for lack of subject matter jurisdiction, Mr. Jackson asserts in his response to defendant's motion to dismiss that an implied-in-fact contract exists between him and the Department of Veterans Affairs, that the Department breached that contract when it denied Mr. Jackson vocational rehabilitation, and that he suffered monetary damages as a result of the breach. Pl.'s Response at 2. It is difficult to determine from Mr. Jackson's complaint and its attached exhibits the precise terms of the alleged contract, but the Court presumes

---

**10.** Section 1631 adopts the definition of "court" used in 28 U.S.C. § 610: "the courts of appeals and district courts of the United States, the Unites States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of

International Trade." Transfer is permitted only to those courts listed in section 610. *Skillo v. United States,* 68 Fed.Cl. 734, 743–47 (2005). The Court of Appeals for Veterans Claims is not a "court[ ] of appeals ... of the United States" as that term is used in chapter 3 of title 28, which refers to the thirteen circuit courts of appeals.

that the alleged contract generally involved an exchange of promises to perform services, with Mr. Jackson and the Department of Veterans Affairs each promising to carry out those tasks described on Exhibit 9 to the complaint, the Department of Veterans Affairs Rehabilitation Plan. Thus, Mr. Jackson promised to, *inter alia,* "[s]uccessfully secure admission to the Univ[ersity] of Florida" and "[s]uccessfully complete one academic year of training," while the Department of Veterans Affairs promised to provide "supportive counseling services," as well as "[r]equired tuition, fees, [and] textbooks." Complaint, Ex. 9.

Given the exchange of promises described above, it is understandable that Mr. Jackson characterizes the relationship between the Department of Veterans Affairs and himself as contractual. But "[t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Kania v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, 268 (Ct.Cl.1981). While the exchange of promises in Exhibit 9 to the complaint might give rise to an enforceable contractual relationship if both parties to the agreement were private citizens, "courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." *Adams v. United States,* 391 F.3d 1212, 1221 (Fed.Cir.2004).

Instead of a contractual relationship, the relationship between Mr. Jackson and the Department of Veterans Affairs is based on Mr. Jackson's status under the law: Mr. Jackson is a veteran seeking benefits he alleges are owed to him by the Department of Veterans Affairs because of his status as a veteran. Congress has enacted a comprehensive statutory scheme spelling out the administrative and judicial processes that must be followed in order to obtain review of decisions by the Department of Veterans Affairs. As discussed above, under 38 U.S.C. § 511, "[t]he Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.... [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." Thus, "[a]ppeals from VA local offices lie with the Board of Veterans Appeals. The Court of Appeals for Veterans Claims has exclusive jurisdiction to review decisions of the Board of Veterans Appeals under 38 U.S.C. § 7252(a) (2000). Finally, appeals from that court are within the exclusive jurisdiction of the United States Court of Appeals for the Federal Circuit." *Van Allen,* 66 Fed. Cl. at 295–96. "When such a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." *Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed. Cir.2001) (*quoting St. Vincent's Med. Ctr. v. United States,* 32 F.3d 548, 549–50 (Fed.Cir. 1994)); *see also United States v. Fausto,* 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (finding no jurisdiction in the predecessor to the Court of Federal Claims where Congress "established a comprehensive system for reviewing personnel action taken against federal employees"). Therefore, even to the extent Mr. Jackson's claim for denial of vocational rehabilitation could be described as a matter of contract, the Court of Federal Claims could not exercise jurisdiction to hear the claim, because any such jurisdiction has been preempted by the comprehensive statutory scheme, established by Congress, providing for administrative and judicial review of claims for veterans benefits. Mr. Jackson's claim for denial of vocational rehabilitation services, whether cast as an appeal of an unfavorable decision on his request for benefits or as breach of a contract implied in fact, can be heard and decided only by the Board of Veterans' Appeals, the Court of Appeals for Veterans Claims, or the United States Court of Appeals for the Federal Circuit. This Court cannot hear the claim.

### CONCLUSION

For the reasons set forth above, the United States Court of Federal Claims is without jurisdiction to hear any of Mr. Jackson's various claims against the United States. Accordingly, defendant's motion for summary dismissal pursuant to RCFC 12(b)(1) is **GRANTED.** The clerk is directed to enter judgment dismissing plaintiff's complaint without prejudice to his filing in an appropriate forum.

IT IS SO ORDERED.