**Eugene C. SMALLS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 08–250C.**

United States Court of Federal Claims.

June 5, 2009.

---

over plaintiff's complaint. Plaintiff filed a cross-motion for summary judgment and requested, in the alternative, that his action be transferred to a court with jurisdiction. For the reasons set forth below, the Court grants the Government's motion to dismiss and denies plaintiff's cross-motion for summary judgment. The Court has also concluded that this case does not meet the criteria for transfer pursuant to 28 U.S.C. § 1631. Accordingly the Court declines to transfer this case to a district court or other court pursuant to 28 U.S.C. § 1631.

## BACKGROUND

The following facts, taken from plaintiff's filings and their attachments, are, in the absence of challenge by defendant, presumed true for the purpose of deciding defendant's motion to dismiss for lack of subject matter jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747–48 (Fed.Cir.1988) (stating that decisions on motions to dismiss normally "consider the facts alleged in the complaint to be true and correct," but when the defendant "challenges the truth of the jurisdictional facts alleged in the complaint," the plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence").

Plaintiff served in the United States Marine Corps from July 1978 to December 1980, when he was honorably discharged for medical reasons. Complaint ¶ 18 (docket entry 1, April 8, 2008). In September 1993, plaintiff submitted a claim to the RO for reimbursement of $13,242.92 expended for private medical treatment rendered from August 1992 to September 1993 ("Original Claim"). *Id.* ¶¶ 7, 22. The private treatment was provided by Dr. Michael Lee for bilateral plantar fasciitis; Dr. V.G. Clark–Wismer for arthritis, pain and associated psychological stress; and Dr. Jarret Ko for back and foot injuries. *Id.* ¶¶ 22, 29–31. Each of these physicians was in private practice and not associated with the VA. *Smalls v. West,* 16 Vet.App. 41, 1998 WL 190357, at *1 (1998).

On October 21, 1993, the RO denied plaintiff's claim for reimbursement of non-VA medical expenses. Complaint ¶ 23; Ex. 13 to Plaintiff's Supplemental Brief (docket entry

Eugene C. Smalls, pro se, plaintiff.

David D'Alessandris, Trial Attorney, Todd M. Hughes, Deputy Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Miles Miyamoto, Attorney, Department of Veterans Affairs, of counsel.

## *OPINION AND ORDER*

GEORGE W. MILLER, Judge.

Plaintiff, who is appearing *pro se*, filed a complaint in this court seeking injunctive relief and monetary damages relating to his application to reopen a claim for reimbursement of the cost of certain medical treatment that had been denied by the Department of Veterans Affairs ("VA") Regional Office in Honolulu, Hawaii ("RO"). The Government filed a motion to dismiss plaintiff's complaint asserting that the United States Court of Federal Claims does not have jurisdiction

13, Jan. 16, 2009) ("Pl.'s Supp. Br."). In May 1994, plaintiff filed an appeal with the Board of Veterans Appeals ("BVA"). The Board upheld the RO's decision on February 25, 1997, finding that plaintiff "did not receive authorization from the VA for the outpatient treatment" and that the treatment "was not rendered under emergent conditions." *Smalls*, 1998 WL 190357, at *1; Complaint ¶ 25. Shortly after the BVA's decision, in March and April of 1997, plaintiff acquired what he characterizes as new evidence in the form of letters from the three treating physicians ("Doctors' Explanatory Letters") stating that their services were "critical" or of an "emergent nature." Exs. 9–11 to Plaintiff's Response to Defendant's Motion to Dismiss and Cross–Motion for Summary Judgment (docket entry 7, July 16, 2008) ("Pl.'s Resp."). Plaintiff also submitted affidavits to the RO from Dr. Lee and Dr. Ko explaining their treatment of plaintiff. Complaint ¶¶ 58–60; Exs. 15, 16 to Pl.'s Resp.

Plaintiff appealed the BVA's decision to the United States Court of Veterans Appeals ("Veterans Court").[1] It is unclear from the record whether the Doctors' Explanatory Letters, which were obtained by plaintiff after the BVA decision, were presented to the Veterans Court, and if so whether the Veterans Court reviewed and/or considered the documents.[2] On March 24, 1998, the Veterans Court granted the motion of the Secretary of Veterans Affairs for summary affirmance, stating that "while it does appear that some of the private treatment for which the appellant seeks reimbursement was for his service-connected conditions, there is no evidence in the record that any of the treatment was 'rendered in a medical emergency of such nature that delay would have been hazardous to [his] life or health'" and "the appellant specifically stated in his original claim for reimbursement that 'no emergency existe[d].'" *Smalls*, 1998 WL 190357 at *2.

Following the Veterans Court's decision, plaintiff appears to have spent the next ten years attempting to use the Doctors' Explanatory Letters to reopen his claim. Correspondence submitted by plaintiff suggests that when he first applied for reimbursement, he did not understand the definition of "emergency" as used in reference to the criteria for granting reimbursement claims. *See* 38 U.S.C. § 1728(a) (2006), *subsequently amended by* Pub.L. 110–387, § 402(b)(1), 122 Stat. 4110, 4123 (2008) (stating that veterans may be reimbursed for non-VA medical expenses when "such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health"). Plaintiff stated he originally believed that his treatment was not in response to an emergency because it was not in response to an acute life-threatening situation. Ex. 13 to Pl.'s Resp. To demonstrate that his treatment was in fact rendered in response to his new understanding of a medical emergency, which plaintiff alleged included "action to prevent a condition from worsening to a state where irreparable harm may be the result," plaintiff submitted to the RO the Doctors' Explanatory Letters along with a request that the RO reopen his claim. Ex. 13 to Pl.'s Resp.; Complaint ¶¶ 28, 34.

The record in this case includes an abundance of lengthy letters from plaintiff to the VA and succinct, often form-style letters, sent to plaintiff by the VA in response. The Court has tried to understand the chronology of events by reference to plaintiff's complaint and the documents provided by plaintiff with his brief in response to defendant's motion to dismiss. It appears that over the course of

1. In 1999 the United States Court of Veterans Appeals was renamed the United States Court of Appeals for Veterans Claims.

2. A letter from James E. Hastings, M.D. ("Dr.Hastings"), Director of the Department of Veterans Affairs Pacific Islands Health Care System Spark M. Matsunaga Medical Center in Honolulu, Hawaii, to Congressman C.W. Bill Young dated August 31, 2007, states "[o]n 21 October 1997, Mr. Smalls submitted new evidence for record to the United States Court of Veterans Appeals." Ex. 1 to Pl.'s Resp. Mr. Smalls adds that "[a]lthough this is true, the court cannot review new evidence that has not been before the Local VA Office. Therefore, any document that was submitted is moot." Complaint ¶ 7. Dr. Hastings's letter does not state whether the Veterans Court reviewed any new evidence submitted by Mr. Smalls. Ex. 1 to Pl.'s Resp. The Veterans Court did not mention the Doctors' Explanatory Letters in its opinion. *Smalls*, 1998 WL 190357.

ten years, plaintiff attempted without success to persuade the RO to act upon his application to reopen and to review the claim on the merits with particular reference to the Doctors' Explanatory Letters as new and material evidence within the meaning of 38 C.F.R. § 3.156(a) and 38 U.S.C. § 5108. Complaint ¶¶ 46–89. In his quest, plaintiff wrote directly to several VA Directors as well as to at least one Congressman and Senator. *Id.* ¶¶ 47–52, 62, 72–73, 75–76, 81, 84–85, 87. Plaintiff appears to have expected the VA to issue him a "Statement of the Case" similar to the document he received in response to his Original Claim. *See* Ex. 22 to Pl.'s Resp; Ex. 14 to Pl.'s Supp. Br. Plaintiff, however, asserted he never received a Statement of the Case or any other correspondence stating clearly that the VA had reviewed the Doctors' Explanatory Letters and upon review the VA did not consider them to be new and material evidence. *Id.* ¶¶ 90, 95.

Instead, despite many attempts by plaintiff to clarify his position, the VA sent responses appearing to construe plaintiff's request as one for review of the Veterans Court's denial of his Original Claim instead of a request to reopen that claim to consider new evidence. In addition, the VA told plaintiff at various times that his request could not be reviewed because his files were with the Veterans Court; the VA was missing information he had previously provided; a one-year period had elapsed since the date of mailing of notice of the result of the initial determination; along with various other reasons. Complaint ¶¶ 55, 63, 65; Exs. 20–22 to Pl.'s Resp. For example, on August 31, 2007, the VA sent a letter to plaintiff's Congressman and copied plaintiff stating that it no longer had jurisdiction over the "appeal." Complaint ¶ 75; Ex. 1 to Pl.'s Resp. ("Denial Letter I"). A certain amount of confusion may have been due to the fact that plaintiff had multiple matters pending before the VA, including two appeals remanded by the BVA and a claim for higher disability rating that was pending at the VA Regional Office in St. Petersburg, Florida. Defendant's Supplemental Brief and Appendix (docket entry 14, Jan. 16, 2009) ("Def.'s Supp. Br.") at 4–5. Apparently it is difficult for the VA to coordinate access to necessary information when an

individual has multiple matters pending at the same time. *Id.* at 5 (attempting to explain why, in April 2008, the BVA had not taken any action on plaintiff's September 18, 2007 appeal from the denial of his request to reopen by stating "the VA Regional Office in St. Petersburg is holding Mr. Smalls' claim folders while working upon Mr. Smalls' multiple pending actions").

Although frustrated by what he regarded as a lack of response from the VA, plaintiff continued his attempt to persuade the VA to reopen his Original Claim based on the content of the Doctors' Explanatory Letters. Plaintiff submitted to the RO requests to reopen on the following dates: April 17, 1998; October 13, 1999; June 5, 2001; August 22, 2001; and November 14, 2001. Complaint ¶¶ 38, 46, 54, 56–58; Ex. 12 to Pl.'s Resp. At least one of these requests included a completed VA Form 10–583(R) entitled "Claim for Payment of Cost of Unauthorized Medical Services." Complaint ¶ 46; Ex. 12 to Pl.'s Resp. It is unclear from the record if a more appropriate VA form existed for requesting that a previously denied claim be reopened.

Many of the VA's letters to plaintiff appear to be form letters suitable for use in responding to an original request for the payment of unauthorized medical services. They seem to have been written without consideration of plaintiff's ongoing requests to reopen a previously denied claim. *See* Ex. 4 to Pl.'s Resp. (letter from Director H. David Burge to Senator Daniel K. Akaka dated April 3, 2000); Ex. 5 to Pl.'s Resp. (letter from Veterans Service Center Manager D.K. Kalama to plaintiff dated June 13, 2005); Ex. 20 to Pl.'s Resp. (letter from Chief, Non–VA Care Services Mary Zadlo to plaintiff dated Jan. 9, 2006); Ex. 21 to Pl.'s Resp. (letter from Department of Veterans Affairs James H. Wilson to plaintiff dated Feb. 6, 2006); Ex. 22 to Pl.'s Resp. (letter from VA to plaintiff dated May 31, 2006); Ex. 2 to Pl.'s Resp. (letter from Director Gregory C. Reed to Congressman C.W. Bill Young dated Dec. 15, 2006). On October 22, 2007, plaintiff received a letter from the VA stating that "this letter will be considered the final response to your inquiry about your denial." Ex. 1 to

Pl.'s Resp. ("Denial Letter II"). Although not a Statement of the Case, plaintiff stated in his complaint that he construed this letter as a "final order" denying his request to reopen his 1993 claim. Complaint ¶ 6. However, despite this statement, plaintiff's complaint also alleges that the VA "failed to send [plaintiff] a decision denying his Reopen Claim Request for benefits," and did not make "a clear and appealable final decision of [plaintiff's] Reopen claim Request." Complaint ¶¶ 99, 101. In response to Denial Letter II, plaintiff wrote to Dr. Hastings on November 1, 2007 that "I am not going to go away until I receive a merit decision or a Statement of the Case upon which I may base an Appeal, which I'm entitled to." Ex. 18 to Pl.'s Resp.

On September 18, 2007, plaintiff filed an appeal to the BVA stating that "the local VA located in Honolulu, Hawaii refused to send [plaintiff] ... a STATEMENT OF THE CASE pertaining to this re-open claim for Reimbursement or payment for Unauthorized Medical expenses associated with private medical treatment." Complaint ¶ 77; Ex. 19 to Pl.'s Resp. After filing this appeal plaintiff continued to state that he had not received a clear and final decision on his request to reopen. However, in his appeal plaintiff referred to Denial Letter I, stating that he "received from [Dr. Hastings] a denial letter" which "refused to submit to [plaintiff]" a Statement of the Case, which would allow plaintiff "to disagree with the findings" and appeal to the BVA. Ex. 19 to Pl.'s Resp. Plaintiff had received no information regarding the status of his appeal as of April 8, 2008 when he filed his complaint in this case. Complaint ¶ 77.

In Denial Letter II, Dr. Hastings stated that "[i]n this case the Veterans Benefits Administration has rendered a decision, which has been upheld by the Court of Veterans Appeals ... this letter will be considered the final response to your inquiry about your denial." Ex. 1 to Pl.'s Resp. While this letter, dated October 22, 2007, was written after plaintiff's appeal to the BVA, it is unclear whether the letter refers to plaintiff's September 18, 2007 appeal or to previous correspondence between plaintiff and Dr. Hastings relating to the denial of plaintiff's Original Claim. The Government states that plaintiff's appeal "was received by the Board of Veterans Appeals intake unit on October 25, 2007. At this time, we are not aware of any jurisdictional deficiency in Mr. Smalls' appeal of the VA Pacific Islands Health Care System's denial of his request to reopen his claim." Defendant's Supplemental Response Brief (docket entry 15, Feb. 5, 2009) ("Def.'s Supp. Resp. Br.") at 3. With respect to the status of this appeal, the Government states that "[i]t does not appear from [plaintiff's] claims folder that the Board of Veterans Appeals had initiated action upon this appeal.... This may be due to the fact that [plaintiff's] claims folders have been in St. Peterburg, Florida while the Board of Veterans Appeals is in Washington, D.C. It appears that the VA Regional Office in St. Petersburg is holding [plaintiff's] claim folders while working upon [plaintiff's] multiple pending actions within the VA."[3] Def.'s Supp. Resp. Br. at 4–5.

Plaintiff claims that the VA failed to consider new and material evidence as required by 38 C.F.R. § 3.156(a), which states that "[a] claimant may reopen a finally adjudicated claim by submitting new and material evidence," and 38 U.S.C. § 5108, which states that "if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." Complaint ¶¶ 1, 4, 97, 105. The Government argues that this court is without subject matter jurisdiction to hear this case because plaintiff's claims are barred by the statute of limitations or, in the alternative, judicial review of the VA's action regarding plaintiff's request to reopen is precluded by 38 U.S.C. § 511(a), which makes final and conclusive determinations by the

---

3. In defendant's supplemental brief, while maintaining that "the processing of [plaintiff's] September 18, 2007 appeal requires no supplemental denial," the VA offers to promulgate a supplemental denial of plaintiff's request to re-open. Def.'s Supp. Br. at 5–6. The proffered denial would make clear that plaintiff could then file an appeal to the BVA from the supplemental denial of his request to reopen.

Secretary on "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans" and precludes review of such determinations by "any other official or by any court."

## DISCUSSION

### I. Standard of Review

As stated earlier, in considering a motion to dismiss, facts alleged as the basis for jurisdiction are taken as true unless challenged by defendant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). If defendant challenges the truth of the jurisdictional facts alleged in the complaint, plaintiff has the burden to prove subject matter jurisdiction. *See Reynolds,* 846 F.2d at 747–48. The Court recognizes that plaintiff is appearing *pro se,* and thus the Court has held plaintiff's submissions to a less stringent standard than those drafted by an attorney. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The fact that plaintiff is proceeding *pro se,* however, does not relieve plaintiff from meeting jurisdictional requirements. *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004). Thus, "if the court finds that it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States,* 72 Fed.Cl. 274, 278 (2006); *see* Rule 12(h)(3) of the Rules of the Court of Federal Claims ("RCFC"). Even under the less-stringent standard applicable to *pro se* plaintiffs, this Court has concluded, for the reasons set forth below, that it lacks jurisdiction over the subject matter of plaintiff's claims.

### II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant's motion asserts that plaintiff does not set forth any claims within the jurisdiction of this Court. Defendant's Motion to Dismiss (docket entry 5, June 4, 2008) ("Def.'s Mot.") at 4. Like all federal courts, the United States Court of Federal Claims is a court of limited jurisdiction. *Phaidin v. United States,* 28 Fed.Cl. 231, 233 (1993); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428 (1984). Absent congressional consent to entertain a claim against the United States, the court lacks authority to grant relief. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Fid. Constr. Co. v. United States,* 700 F.2d 1379, 1383 (Fed.Cir.1983).

### A. This Court Lacks Jurisdiction Over Plaintiff's Claims For Damages

■ Plaintiff requests damages for his "emotional distress" allegedly caused by "the long period of delays in his claim and for clear violations of sections within the law." Complaint ¶ 94. This claim appears to be based, in part at least, on a tort theory. This court does not have jurisdiction over claims "sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides that the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

While the Tucker Act provides the waiver of sovereign immunity necessary to maintain a lawsuit against the United States, the plaintiff must also establish an independent substantive right to recover money damages from the United States in order for the case to proceed. *See Testan,* 424 U.S. at 398, 96 S.Ct. 948. The alleged source of the substantive right to money damages must "be reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 466, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003).

Plaintiff asserts that 38 U.S.C. § 5905(2) is the appropriate money-mandating statute in this case. Pl.'s Resp. at 6–8. 38 U.S.C. § 5905(2) provides that "[w]hoever wrongful-

ly withholds from any claimant or beneficiary any part of a benefit or claim allowed and due to the claimant or beneficiary, shall be fined as provided in title 18, or imprisoned not more than one year, or both." This statute is not money-mandating. It provides for a penalty, but does not provide a right of recovery to any individual, including plaintiff. *See Spehr v. United States,* 51 Fed.Cl. 69, 93 (2001) (finding 18 U.S.C. § 245, which prescribes civil and criminal penalties for interference with participation in a federal program or employment in a federal agency, not to be money-mandating because it does not confer "a substantive right to recover money damages against the United States"); *see also Pacific Nat'l Cellular v. United States,* 41 Fed.Cl. 20, 30 (1998) (finding that although the Paperwork Reduction Act provided for a fine or imprisonment in certain situations it was not money-mandating because "[n]othing in the statute creates an entitlement in any individual or entity to collect money from the sovereign").

B. *This Court Lacks Jurisdiction Over Any Claim by Plaintiff Seeking Review of the Secretary's Denial of his Original Claim*

■ To the extent that plaintiff is requesting that this Court review the denial of his Original Claim, this Court lacks jurisdiction to do so. Under 38 U.S.C. § 511(a), "[t]he Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. . . . [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." Thus, the Court of Federal Claims "has repeatedly held that it has no jurisdiction to hear claims for denial of veterans benefits." *Jackson v. United States,* 80 Fed.Cl. 560, 566 (2008) (citing *Ferreiro v. United States,* 72 Fed.Cl. 1, 6 (2006), *aff'd* 501 F.3d 1349 (Fed.Cir.2007); *Van Allen v. United States,* 66 Fed.Cl. 294, 296 (2005)).

Veterans health benefits are administered by the VA. 38 U.S.C. § 1710. If the VA denies a veteran's application for benefits, the veteran must proceed through a series of defined steps to appeal such denial. The veteran may appeal the denial of his VA application to the BVA. *See* 38 U.S.C. § 7104. Next, if the BVA does not decide the appeal in the veteran's favor, he can appeal the denial to the Veterans Court. 38 U.S.C. § 7252(a) ("The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."); *Van Allen,* 66 Fed.Cl. at 295–96. Finally, the veteran may appeal certain decisions of the Veterans Court to the United States Court of Appeals for the Federal Circuit. 38 U.S.C. § 7292 ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision."); *Van Allen,* 66 Fed.Cl. at 296. At no point in this process does this Court have a role in adjudicating the veteran's entitlement to VA benefits such as those sought by plaintiff. *See Jackson v. United States,* 242 Fed.Appx. 698, 700–01 (Fed.Cir. 2007); *Janaskie v. United States,* 77 Fed.Cl. 654, 657–58 (2007). Therefore, this Court does not have jurisdiction to review the merits of the decision of the Secretary denying plaintiff's Original Claim.

C. *This Court Lacks Jurisdiction Over Plaintiff's Claim Seeking Review of the VA's Denial of His Request to Reopen*

■ Similar to a claim for review of the VA's denial of his Original Claim, this Court is also precluded by 38 U.S.C. § 511(a) from reviewing the VA's denial of plaintiff's request to reopen his claim that was previously denied. A decision to deny plaintiff's request to reopen his claim involves questions "of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Therefore, the Secretary's decision on plaintiff's request to reopen is "final and conclusive" and not reviewable by

this Court, *see* Part II.B, *supra*. This Court does not have jurisdiction to review the merits of the VA's decision denying plaintiff's request that the VA reopen his claim.

Plaintiff relies on 38 C.F.R. § 3.156(a), which provides:

> A claimant may reopen a finally adjudicated claim by submitting new and material evidence. New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim.

However, § 3.156(a) does not apply to claims for reimbursement of non-VA care. Rather, it applies to the adjudication of pension, compensation and dependency and indemnity compensation.[4] Plaintiff also relies on 38 U.S.C. § 5108, which provides:

> If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

Even under that section, however, the Secretary must ultimately determine if "new and material evidence [has been] presented or secured." And the Secretary's determination in that regard is not subject to review by this Court. 38 U.S.C. § 511(a).

**D.** *This Court Lacks Jurisdiction Over Plaintiff's Claim For Injunctive Relief*

Plaintiff requests that this Court issue "injunctive relief to have [plaintiff's] applications and the new evidence submitted therewith, be given a merit review by the Director of the Medical Center located in Honolulu, Hawaii, so he can compare the new evidence with the old and the complete medical file in order to provide a well reasoned decision as to weather [sic] the records as a whole grant [plaintiff's] application [for] such relief." Complaint, Prayer for Relief. This Court, however, for the reasons described below, lacks authority to grant the injunctive relief sought by plaintiff.

**1.** *This Court Lacks Authority To Grant the Injunctive Relief Sought by Plaintiff*

■ "Except in strictly limited circumstances," which are inapplicable here, *see* 28 U.S.C. § 1491(a)(2), (b)(2), the Tucker Act does not authorize the Court of Federal Claims to order equitable relief such as specific performance, a declaratory judgment, or an injunction. *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000); *see also United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("[C]ases seeking relief other than money damages from the Court of Claims have never been within its jurisdiction") (internal quotations omitted); *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1294 (Fed. Cir.1999) ("[The Court of Federal Claims] cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance."). Plaintiff's request for an injunction requiring a "merit review by the Director of the Medical Center located in Honolulu, Hawaii, so he can compare the new evidence with the old and the complete medical file in order to provide a well reasoned decision" is a request for equi-

---

4. When plaintiff filed his initial request to reopen on April 17, 1998, there were no regulations specifying procedures for dealing with applications to reopen claims for reimbursement of non-VA care, such as plaintiff's Original Claim. On August 17, 1999, more than a year after the decision of the Veterans Court affirming the VA's denial of plaintiff's Original Claim, 38 C.F.R. § 17.133 became effective. It provided procedures for dealing with requests to reopen. 38 C.F.R. § 17.133(a) includes a requirement that any reconsideration request be submitted to the VA "within one year of the initial decision." However, this provision should not bar plaintiff's request to reopen because § 17.133 was promulgated more than one year after plaintiff's initial request to reopen was filed on April 17, 1998. In addition, when the VA finally denied plaintiff's request to reopen in August of 2007, plaintiff promptly filed an appeal to the BVA, which remains pending.

table relief that this Court lacks jurisdiction to grant.

### 2. *This Court Lacks Jurisdiction Over Actions Based on the APA*

■ Plaintiff's request for injunctive relief can also be read to request this Court to compel agency action that has been unreasonably delayed, a power possessed by federal district courts under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). However, this Court lacks jurisdiction to entertain an action based on the APA. *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed.Cir.2003) ("[T]he Court of Federal Claims lacks APA jurisdiction...."); *Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993) ("[T]he Claims Court has no authority to invoke the APA."); *accord Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n. 11 (Fed.Cir.2005) ("Of course, no APA review is available in the Court of Federal Claims.").

### E. *The Court Finds It Unnecessary to Consider Defendant's Argument that All of Plaintiff's Claims are Barred by the Statute of Limitations*

Defendant argues that plaintiff's complaint is also barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Defendant argues that plaintiff's claim accrued on October 21, 1993, when the RO denied plaintiff's Original Claim. Def.'s Mot. at 8. Accordingly, the six-year limitations period ended October 21, 1999. *Id.* Defendant alternatively asserts that plaintiff's claim accrued on April 15, 1998, the date of the Veterans Court's affirmance of the denial of the Original Claim. *Id.* at 9. Under that theory, the six-year limitations period expired on April 15, 2004. These two dates are only relevant, however, to the extent that plaintiff is seeking a review of the denial of his Original Claim. To the extent plaintiff's complaint requests a review of the VA's denial of plaintiff's request to reopen or an order requiring the VA to reopen his Original Claim, those two dates are not relevant to the accrual of such claims.

Plaintiff initiated an appeal to the BVA on September 18, 2007 from the VA's denial of his request to reopen. Viewing the facts in the light most favorable to plaintiff, that denial occurred in August of 2007. Thus, plaintiff's claim for review of the VA's denial accrued in August of 2007—within six years prior to the filing of this action in April of 2008. With respect to the date of accrual of plaintiff's APA claim, courts have found that claims to compel agency action are time-barred if initiated more than six years after an agency fails to meet a statutory deadline. *The Wilderness Soc'y v. Norton*, 434 F.3d 584, 588 (D.C.Cir.2006); *West Virginia Highlands Conservancy v. Johnson*, 540 F.Supp.2d 125, 140 (2008). Neither party asserts that such a statutory deadline was applicable in this case. Thus, it is not clear when plaintiff's APA claim accrued. Since the Court has determined for other reasons that it does not have jurisdiction over plaintiff's claims, the Court finds it unnecessary to resolve defendant's contention that all of plaintiff's claims are barred by the statute of limitations.

In summary, this Court lacks jurisdiction to hear plaintiff's claims for damages. It also lacks subject matter jurisdiction over plaintiff's claims seeking review of the merits of the VA's denial of his Original Claim, and review of the denial of his request to reopen. In addition, this Court does not have jurisdiction to grant plaintiff's request for an order requiring the VA to reopen his Original Claim. Finally, this Court does not have jurisdiction to consider plaintiff's claim for injunctive relief based upon the APA. This Court, therefore, lacks subject matter jurisdiction over all of plaintiff's claims for relief.

### III. This Court Declines to Transfer Plaintiff's Action to Another Court

Plaintiff requests that, if this Court determines that it is without jurisdiction to hear his claims, the Court transfer plaintiff's action pursuant to 28 U.S.C. § 1631 to a court with jurisdiction. Pl.'s Resp. at 20. Given the facts of this case, there are several potential choices for transfer: the Board of Veterans Appeals, the Veterans Court, the Federal Circuit, or a United States District Court. 28 U.S.C. § 1631 gives this Court the power to transfer an action whenever this Court

"finds that there is a want of jurisdiction." The Court may then "transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

**A.** *This Court Cannot Transfer Plaintiff's Action to the Board of Veterans Appeals, the Veterans Court, or the Federal Circuit*

■ The power to transfer is limited to those courts identified in 28 U.S.C. § 610, including, "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." *Skillo v. United States,* 68 Fed.Cl. 734, 743–47 (2005). This definition does not permit a transfer to the BVA, which is an administrative agency within the Department of Veterans Affairs. *Jackson,* 80 Fed.Cl. at 566. Further, this Court cannot transfer a complaint to the Veterans Court. Although it is an Article I court, the Veterans Court is not a "court" within the meaning of 28 U.S.C. § 610. *Jackson,* 80 Fed.Cl. at 566 n. 10. In addition, although the Federal Circuit is potentially available for transfer because it is within the definition of "court" in section 610, this Court cannot transfer plaintiff's action to the Federal Circuit because plaintiff's claims could not have been filed in the Federal Circuit at the time they were filed in this court. The time for appeal to the Federal Circuit from the Veterans Court's 1998 decision, which upheld the denial of plaintiff's Original Claim, expired long ago, and plaintiff has identified no other Veterans Court decision from which it could properly appeal to the Federal Circuit. *Smalls v. West,* 16 Vet.App. 41, 1998 WL 190357 (1998).

**B.** *This Court Cannot Transfer Plaintiff's Action To A United States District Court Because No Such Court Would Have Had Jurisdiction Over Any of Plaintiff's Claims At the Time They Were Filed in This Court*

■ The question whether it would be proper to transfer plaintiff's complaint to a United States District Court is more complicated. Two questions must be answered: 1) whether plaintiff's action could have been brought in a district court at the time it was filed in this court; and 2) whether it is in the interest of justice to transfer the action. *Rodriguez v. United States,* 862 F.2d 1558, 1559–60 (Fed.Cir.1988); *Skillo,* 68 Fed.Cl. at 744. To ascertain whether plaintiff's action could have been brought in a district court at the time it was filed here requires a determination of whether a district court would have had jurisdiction to hear any of plaintiff's claims.

**1.** *No District Court Would Have Had Jurisdiction To Hear Plaintiff's Claims For Damages, For Review of the VA's Denial of Plaintiff's Original Claim, or For an Order Requiring the VA to Reopen Plaintiff's Previously Denied Claim*

Judicial review of VA benefit determinations by any court other than the Veterans Court or the Federal Circuit is precluded by 38 U.S.C. § 511(a). The statute precludes judicial review of the Secretary's resolution of "all questions of law and fact" as long as the Secretary's resolution of such questions is "necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Granting plaintiff's request for damages, review of the denial of his Original Claim, or injunctive relief would require a district court to determine whether plaintiff is entitled to the reimbursement sought in his Original Claim or to an order requiring the VA to reopen that claim. Such determinations are precluded by 38 U.S.C. § 511(a). *See Price v. United States,* 228 F.3d 420, 421 (D.C.Cir.2000) (per curiam) (holding that "the district court lacked jurisdiction to consider [appellant's] federal claim because underlying the claim is an allegation that the VA unjustifiably denied him a veterans' benefit."). Congress has precluded judicial review of the Secretary's resolution of all factual and legal issues arising under laws that affect the provision of benefits to veterans by the Secretary.

To the degree that plaintiff's claim sounds in tort, the district court could have jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). However, in this case any claim by plaintiff under that statute would fail by reason of plaintiff's failure to comply with 28 U.S.C. § 2675(a), which provides that as a prerequisite to instituting a tort action against the United States, the claimant must first present such claim to the appropriate federal agency and receive a denial of the claim from the agency.[5] *Slater v. United States,* 175 Fed.Appx. 300, 304 (11th Cir.2006); *Dembeck–Weiss v. United States,* 2007 WL 1657418, at *4–5 (D.Md.2007). There is no evidence in the record of plaintiff's having presented a tort claim to the VA or having otherwise complied with the Act or the implementing regulations promulgated by the Justice Department.

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), gives the district courts concurrent jurisdiction with this Court over contract claims not exceeding $10,000. But that grant of jurisdiction is, like the Tucker Act itself, subject to the requirement that a plaintiff whose claim is founded on statute or regulation must identify a "money-mandating" provision that entitles plaintiff to recover money damages for a violation of the statute or regulation in question. *In re Long–Distance Tel. Serv. Fed. Excise Tax Refund Litig.,* 539 F.Supp.2d 281, 300 (D.D.C.2008); *Matsuo v. United States,* 416 F.Supp.2d 982, 988–90 (D.Haw.2006); *Fleming v. United States,* 413 F.Supp.2d 503, 505–06 (E.D.Pa.2005). In this case, as noted in Part II.A., *supra,* plaintiff has failed to identify such a provision. Thus, just as the Court of Federal Claims lacks jurisdiction over plaintiff's claim for damages under the Tucker Act, so the district court would lack jurisdiction over plaintiff's claim for damages under the Little Tucker Act.

Thus, no United States District Court would have possessed subject matter jurisdiction to hear plaintiff's claims for damages, for review of his Original Claim, or for an order requiring the VA to reopen his Original Claim.

2. *No District Court Would Have Had Jurisdiction Over an Action by Plaintiff Under the APA Because Plaintiff Had an Adequate Alternative Remedy in the Veterans Court*

As noted above, plaintiff's request for relief in this action may be construed as a claim under the APA to compel agency action unreasonably delayed. Clearly, as noted above, the Court of Federal Claims would not have jurisdiction over such a claim. In addition, 5 U.S.C. § 704[6] precludes judicial review of agency action under the APA if plaintiff has an adequate alternative remedy in a "court" within the meaning of the APA. Def.'s Supp. Br. at 6–8. In this case, plaintiff does have an adequate alternative remedy in the Veterans Court, which is a "court" within the meaning of 5 U.S.C. § 704. *See Brazos Elec. Power Co-op., Inc. v. United States,* 144 F.3d 784, 788 (Fed.Cir.1998) (holding that suit in Court of Federal Claims was an adequate remedy precluding suit in a district court under 5 U.S.C. § 704); *Beamon v. Brown,* 125 F.3d 965, 967–70 (6th Cir.1997) (stating that the Veterans Court has the "kind of special and adequate review procedures, that enable it to remedy unreasonable delays by the VA, and make it an adequate forum for plaintiffs' claims") (internal quotations omitted). The Veterans Court has "two sources of power with which it can remedy claims of unreasonable administrative delay or inaction." *Beamon,* 125 F.3d at 967–70. First, the All Writs Act empowers the Veterans Court to issue all writs necessary or appropriate in aid of its jurisdiction. *Id.* (quoting 28 U.S.C. § 1651(a)). Second, Congress specifically empowered the Veterans Court to "compel action of the Secretary unlawfully withheld or unreasonably delayed." *Id.* (quoting 38 U.S.C. § 7261(a)(2)). Therefore, the Veterans Court has the power to remedy the unreasonable delay alleged by plaintiff. Plaintiff's APA claim thus falls within 5

---

**5.** The Department of Justice has promulgated regulations implementing the requirements of the Federal Tort Claims Act. 28 C.F.R. §§ 14.1 *et. seq.* (2008).

**6.** 5 U.S.C. § 704 provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."

U.S.C. § 704's exception to the APA's waiver of sovereign immunity and thus would have been beyond the jurisdiction of any United States District Court.

In view of the foregoing, this Court concludes that none of plaintiff's claims meet the criteria for transfer, and the Court therefore declines to transfer plaintiff's action to any other tribunal pursuant to 28 U.S.C. § 1631.

## CONCLUSION

For the reasons set forth above, the Court concludes that it lacks subject matter jurisdiction over plaintiff's claims, and the Court declines plaintiff's request to transfer this action to another court. Accordingly, plaintiff's complaint is **DISMISSED** without prejudice for lack of subject matter jurisdiction and plaintiff's cross-motion for summary judgment is **DENIED** as moot.[7] The Clerk shall enter judgment dismissing plaintiff's complaint without prejudice pursuant to RCFC 12(b)(1).

**IT IS SO ORDERED.**

---

7. With his complaint, plaintiff filed a motion for leave to proceed *in forma pauperis*. That motion is **GRANTED** for the limited purpose of addressing this court's jurisdiction to consider plaintiff's complaint.