**Natalya HAMPEL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 10–542C.**

United States Court of Federal Claims.

Feb. 18, 2011.

Natalya Hampel, pro se.

Matthew Francis Scarlato, U.S. Department of Justice, Civil Div., Washington, DC, for defendant.

## OPINION AND ORDER

EDWARD J. DAMICH, Judge.

Plaintiff Natalya Hampel filed a complaint *pro se* requesting money damages for harm arising primarily from the circumstances relating to the death of her husband, Joseph Hampel, in March 2002. Defendant United States ("the Government") now moves the court, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), to dismiss this action for lack of subject matter jurisdiction.

For the reasons set forth below, while the court is sympathetic to the plight of Ms. Hampel, it is compelled to GRANT the Government's motion to dismiss.

## I. Background[1]

Plaintiff's claims in this suit relate to the death of her husband, Joseph Hampel, on March 26, 2002. Comp. A28 ¶ 21.[2] Joseph Hampel, a combat veteran of World War II, was admitted at several of the Department of Veterans Affairs ("DVA") medical centers for treatment of Guillain Barre Syndrome, an autoimmune disorder that can lead to paralysis. *See id.* at A23 ¶ 1. Starting with his treatment at a DVA hospital in Perryville, Maryland, in October 1999, Plaintiff alleges that negligence by doctors and hospital staff caused Mr. Hampel to sustain a wound that became infected and later required surgery at another DVA hospital in Baltimore, Maryland. *See id.* at A23 ¶¶ 1, 3. Plaintiff further alleges that negligence by the doctor during the surgery exacerbated the wound, which never eventually healed. *See id.* at A23 ¶ 3. Subsequently, Mr. Hampel was transferred to a third hospital in Fort Howard, Maryland for treatment of the surgical wound. *See id.* at A24 ¶ 4. Plaintiff claims that the hospital in Fort Howard was negligent in providing care and in approving Mr. Hampel's discharge to a DVA facility in Perryville before his wound had fully healed. *See id.* at A24 ¶ 5.

Sometime in early March 2002, Mr. Hampel was again transferred to the DVA hospital in Baltimore because of his further deteriorating health. *See id.* at A24 ¶¶ 6, 8. By this time, Mr. Hampel was paralyzed and continued to suffer from the ongoing infection from the surgical wound, as well as a urinary tract infection and other ailments. *See id.* at A24–25 ¶¶ 6–9. After receiving treatment, Mr. Hampel was discharged on March 15, 2002, and taken to the DVA Baltimore Rehabilitation and Extended Care Center. *See id.* at A25 ¶¶ 8–9. Plaintiff alleges that the transfer was negligent because the facility did not possess the equipment required to adequately treat Mr. Hampel. *See id.* at A25 ¶¶ 9–10. Mr. Hampel's condition worsened when he caught pneumonia and the urinary tract infection progressed into septic shock. *See id.* at A26–A28 ¶¶ 12–19. Mr. Hampel died on March 26, 2002, from septic shock. *See id.* at A28 ¶¶ 19, 21; *see also id.* at A41 (medical record indicating that Mr. Hampel's primary cause of death was sepsis).

Following Mr. Hampel's death, Plaintiff has attempted a series of administrative and legal actions to procure relief for harms she alleges were caused by the government. Based on her claims of improper medical treatment and negligence, Mrs. Hampel applied to the DVA for benefits that she believed were wrongfully withheld. *See id.* at

---

1. The recitations that follow in this section do not constitute findings of fact by the court. These averments are taken from Plaintiff's complaint and the parties' filings on the motion to dismiss and are assumed to be true for purposes of the Government's dispositive motion.

2. Plaintiff's complaint is a compilation of disparate documents and exhibits, intermixing pictures, medical records, and both handwritten and typewritten allegations. Because of the inconsistent and duplicative pagination, the court references the complaint using the Bates numbered index supplied in the appendix to Defendant's Motion to Dismiss.

A60–62; A70 ¶ 28. After more than seven years of litigation before the Board of Veterans Appeals and the United States Court of Appeals for Veterans Claims, Plaintiff's claims were ultimately denied. *See id.* at A5; A69 ¶ 25; A70 ¶ 28; A71 ¶¶ 32–34. Subsequently, Plaintiff brought an action against the United States in the United States District Court for the District of Maryland that contained allegations similar to those found in this case. *See Hampel v. United States,* No. 09–2673, Compl. (D.Md. Oct. 9, 2009). On April 15, 2010, that complaint was dismissed for lack of subject matter jurisdiction and failure to state a claim on which relief could be granted. *See Hampel v. United States,* 706 F.Supp.2d 629 (D.Md.2010).

Plaintiff also alleges that, after filing her suit in the district court, federal agents began to engage in "electromagnetic electronic directed energy surveillance" of Plaintiff and her property for a variety of reasons, including racial animus. *See id.* at A19–A20 ¶¶ 57–60. Plaintiff claims that this electromagnetic pulse has caused her "serious and permanent injuries," including carcinomas and damage to her cardiovascular and gastrointestinal system. *Id.* at A9 ¶ 6.

In this case, Plaintiff brings several claims against the Government. First, Plaintiff seeks for damages resulting from alleged medical malpractice and negligence by hospital staff which caused her husband's death. *See* Comp. A23–A29 (Count I). Second, Plaintiff alleges the violation of her constitutional rights to Due Process and Equal Protection with respect to the denial of her claims to her husband's death benefits by the DVA. *See id.* at A69–A77 (Count II & III). Third, Plaintiff alleges that DVA employees violated her constitutional right to privacy by making false statements in medical records designed to cast aspersions on Plaintiff. *See id.* at A78 (Count IV). Fourth, Plaintiff claims that DVA personnel committed "gross, reprehensible negligence" by making false and abusive statements that were the proximate cause of Mr. Hampel's death and caused Plaintiff to suffer emotional injury. *See id.* at A78–A79 (Count V). Finally, Plaintiff claims that the Government has engaged in "science-fiction type electromagnet-

ic surveillance" against her that has caused severe physical and emotional injury in violation of the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments of the Constitution. *See id.* at A19–A21; A8–A10 (Count VI).

The Plaintiff filed a complaint *pro se* with this court on August 11, 2010. On October 12, 2010, the Government filed the instant motion to dismiss, pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction. Briefing was completed on November 8, 2010.

## II. Standard of Review

■ A *pro se* plaintiff's complaint, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Such leniency, however, does not allow the court to excuse failure to comply with a court's jurisdictional requirements. *See Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995) ("The fact that [plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."); *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("leniency with respect to mere formalities should be extended to a *pro se* party ... [but] a court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only").

■ If the subject matter jurisdiction is found to be lacking, the court is obligated to dismiss the action, RCFC 12(h)(3), and "dismissal without prejudice is the proper course," *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985). In ruling on a motion to dismiss, the court must presume that the undisputed factual allegations included in the plaintiff's complaint are true and construe all reasonable inferences in favor of the plaintiff. *Henke,* 60 F.3d at 797. However, the plaintiff nevertheless has the burden of proving that the court possesses subject matter jurisdiction allowing it to entertain plaintiffs complaint in the first place.

*Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

### III. Discussion

 The Tucker Act, 28 U.S.C. § 1491, is the primary statute that confers jurisdiction upon the Court of Federal Claims. *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.2002). It states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act ... is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore the source of the substantive law must itself create the right to recover money damages. See *id.; Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005). "If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1)." *Adair v. United States,* 497 F.3d 1244, 1251 (Fed.Cir.2007) (citation omitted).

 The Court of Federal Claims does not have jurisdiction over plaintiff's claims of negligence and medical malpractice because such claims sound in tort. *See Mendez–Cardenas v. United States,* 88 Fed.Cl. 162, 166 (2009). *See also Moore v. Durango Jail,* 77 Fed.Cl. 92, 96 (2007) (holding that the Court of Federal Claims did not have jurisdiction over plaintiff's claim because "plaintiff's claim of negligence sounds in tort"); *McCullough v. United States,* 76 Fed.Cl. 1, 4 (2006) (holding that the Court of Federal Claims did not have jurisdiction over plaintiff's medical malpractice claim because medical malpractice is a tort claim) (citations omitted). Because Plaintiff's first, fourth, and fifth claims, as stated above, are based on negligence or medical malpractice, these claims must be dismissed for lack of subject matter jurisdiction.

 Plaintiff's remaining claims allege violation of her constitutional rights to Due Process, Equal Protection, and privacy under the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments. The United States Court of Appeals for the Federal Circuit has held expressly that the Court of Federal Claims does not have jurisdiction over claims arising under the Fifth Amendment Due Process Clause, or the Fifth and Fourteenth Amendment Equal Protection Clauses because they do not mandate the payment of money. *See Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997) (Due Process); *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995) (Equal Protection). Additionally, this court has consistently held that other Amendments to the Constitution are not money-mandating and thus do not provide jurisdiction in the Court of Federal Claims. *See Hernandez v. United States,* 93 Fed.Cl. 193, 198 (2010) (holding that First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution are not money-mandating). *See also Rosano v. United States,* 9 Cl.Ct. 137, 142 (1985), *aff'd,* 800 F.2d 1126 (Fed.Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987) (stating that only the Takings Clause of the Fifth Amendment mandates payment for violations and that all claims founded on other constitutional amendments are outside the jurisdiction of the Court of Federal Claims). Therefore, Plaintiff's constitutional claims must be dismissed.

 Additionally, to the extent that Plaintiff seeks remedy for the denial of her benefits claims by the DVA, this court also lacks jurisdiction over such claims. *See, e.g., Smalls v. United States,* 87 Fed.Cl. 300, 306 (2009) (stating that "the Court of Federal Claims 'has repeatedly held that it has no jurisdiction to hear claims for denial of veterans benefits.'" (citing *Jackson v. United States,* 80 Fed.Cl. 560, 566 (2008))).

Finally, while this court may transfer an action to a proper court upon finding a lack of jurisdiction "if it is in the interest of justice," *see* 28 U.S.C. § 1631, such a transfer would be inappropriate here because Plaintiff has already brought her case before the district court. *See Hampel,* 706 F.Supp.2d 629.

## IV. Conclusion

For the reasons set forth above, the court GRANTS the Government's motion to dismiss and the Clerk of Court is directed to enter judgment, without prejudice, in favor of Defendant.