**Colie L. DAVIS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 12–292C.**

United States Court of Federal Claims.

Nov. 21, 2012.

---

12. This Court makes no finding on the merits of Plaintiff's taking claim at this juncture.

John E. Fitzgibbons, John E. Fitzgibbons, PC, Denver, Colorado, for plaintiff.

Renee A. Gerber, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were Steven J. Gillingham, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Rachel A. Landsee, of counsel, United States Army Litigation Division, Fort Belvoir, Virginia.

## OPINION

HORN, J.

Plaintiff, Colie L. Davis, filed a complaint, followed by an amended complaint, in the United States Court of Federal Claims seeking "regular pay and allowances" in the grade of E5 for the period April 4, 1986 to, and including, June 1, 1986, "retirement pay" from June 2, 1986 to the present, "and for the remainder of his natural life," "back retired pay," from June 2, 1986 to the present, "placement on the rolls of retired military personnel for retirement pay," and correction of his military records. Plaintiff also requests a declaration that his discharge from the United States Army on April 4, 1986 was unlawful and, according to plaintiff, "in contravention of 11 USC 1176(a) [sic]," and "10 U.S.C. Section 1176(a)," as well as of his right to extend his final enlistment term in order to remain in the military until he was eligible for retirement benefits. In addition, plaintiff seeks a court order reversing the August 3, 2010 decision by the Army Board for Correction of Military Records (ABCMR) denying plaintiff's application, and directing the ABCMR to expunge all references in his military records to his unlawful discharge, and to amend plaintiff's records to reflect constructive service from the date of his discharge on April 4, 1986 to, and including, June 1, 1986, the date plaintiff alleges he would have become eligible to receive retirement benefits had he been able to remain on active duty.[1] Plaintiff also requests that he be placed on the rolls of the retired military, effective June 1, 1986. Plaintiff's complaint and amended complaint further allege that the admission of unsubstantiated testimony at his discharge hearing denied him due process of law.

In the amended complaint, plaintiff characterizes his claims as seeking "retired pay, placement on the rolls of retired military personnel for retirement pay, and for correction of military records." (emphasis removed). Although plaintiff's amended complaint eliminates the specific reference to back pay contained in his original complaint, and plaintiff's response to defendant's motion to dismiss describes the amended complaint as seeking "retirement pay," plaintiff's amended complaint appears to continue to assert a claim for back pay because the amended complaint refers to plaintiff's entitlement to "regular pay and allowances" for constructive service and continues to refer to the Military Pay Act, 37 U.S.C. § 204 (2006), for "money he would have received but for his unlawful discharge." In the amended complaint, plaintiff also alleges that "his claim is a continuing claim due and payable periodically." (emphasis removed). In addition, the amended complaint adds a request for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp. V 2011).

The amended complaint includes the following summary paragraph: "Plaintiff requests this court pursuant to 37 USC Section 204 order Plaintiff be awarded his regular pay and allowances for the grade of E5 for the period 4 April 1986 though [sic] and including 1 June 1986; that he be awarded retirement pay from 2 June 1986 to the present, or in the alternative that he be awarded back retired pay as a continuing claim pursuant to 28 U.S.C. Sec. 2501, and for the remainder of his natural life, and for his attorney [sic] fees pursuant to the Equal Access to Justice Act, 28 U.S.C.S. 2412(b)." (emphasis removed).

## FINDINGS OF FACT

Plaintiff was inducted into the Army on December 10, 1965. He was released from active duty on November 8, 1967, joining the Army Reserve, but returned to active duty on April 26, 1968. Plaintiff remained on active duty from April 26, 1968 until his discharge on April 4, 1986. In a letter dated April 27, 1982, the Army informed plaintiff that he would be barred from reenlisting at the end of his current term of service, which was set to expire on September 28, 1985. The record before the court reflects that the bar was issued as part of a Qualitative Management Program. The record also includes references to four of plaintiff's Enlisted Evaluation Reports and nine Uniform Code of

---

1. Plaintiff's amended complaint includes June 1, 1986 in his calculation of back pay, but the record reflects that the Army extended plaintiff's term only to May 31, 1986.

Military Justice Article 15s issued to plaintiff as the basis for the bar to reenlistment. Although plaintiff signed a form acknowledging the bar to reenlistment, and indicated that he intended to appeal the bar, he never initiated an appeal. Plaintiff asserted at his discharge hearing that he contacted an attorney in the Judge Advocate General's Corps to seek legal advice regarding his bar to reenlistment, but that by the time he was able to establish regular communications with the attorney, he was informed that his file did not contain the bar. Plaintiff testified at his discharge hearing that, "[i]t was never explained to me that I had to make a written request to DA [the United States Department of the Army]" in order to lift the bar. Instead, according to plaintiff, he "took for granted" that his reenlistment application would be interpreted as a request to lift the bar. During the discharge hearing, plaintiff also contended that he "did not try to file paperwork concerning the bar because it had been explained to me in Germany that no QMP [Qualitative Management Program] was in my records," and that he did not formally appeal the bar because he believed "[t]here was nothing in my records to appeal."

Plaintiff extended his enlistment on June 18, 1985 to May 31, 1986 in order to become eligible for retirement. Although plaintiff's bar to reenlistment currently appears in his military personnel file, the record suggests that plaintiff's file may not have contained the bar when plaintiff applied to extend his enlistment.[2] The record reflects that, while still stationed in Germany, plaintiff disclosed that he had received the bar to the officer who initially counseled him on reenlistment. It is somewhat unclear, however, whether plaintiff disclosed the bar to Sergeant First Class William C. Bynum, Jr., the officer who extended plaintiff's enlistment when plaintiff returned to the United States, before Sergeant Bynum approved plaintiff's application to extend his enlistment. Moreover, plaintiff

stated during his discharge hearing that he "said nothing about the bar when I arrived on Fort Jackson because of what I had been told by the career counselor in Germany."

Before plaintiff completed the extended term, reenlistment personnel discovered that the Army had issued a bar to plaintiff's reenlistment. According to the ABCMR decision, at plaintiff's request, the Army appointed an Administrative Elimination Board on January 15, 1986, "to determine whether ... Davis ... should be discharged for fraudulent entry" for extending his term of service after he had received a bar to reenlistment. During plaintiff's discharge hearing, Sergeant Bynum testified:

> I am aware that SGT Davis was barred from reenlistment. As a brigade reenlistment NCO [noncommissioned officer], had there been a copy of the QMP bar in the respondent's records when I screened them for the purpose of extension, I would not have extended him.... In responding to the request for extension for retirement and not seeing anything negative in his records, I extended him. Also, SGT Davis informed me that he previously had a bar. He said he had problems in a previous unit due to the supervisors he had. He told me that a SGM [Sergeant Major] in one of those old units was helping him address the matter. I had no reason to believe it was anything other than what was shown in his records. I did not gain knowledge of the QMP bar until after his extension had been accomplished.

On cross-examination at plaintiff's discharge hearing, Sergeant Bynum stated: "SGT Davis was not entitled to extend since he had a bar to reenlistment. He made no mention of the bar during the extension process." Sergeant Bynum's testimony is unclear as to whether plaintiff informed him that plaintiff "previously had a bar" before or after Ser-

---

2. The record indicates that, during plaintiff's discharge hearing, the assistant recorder stated: "It is important to note that the respondent had handcarried his MPRJ [Military Personnel Records Jacket] from Germany to Fort Jackson [in the United States], and was able to reenlist." Plaintiff challenges any implication that he may

have removed the bar from his file before applying to extend his enlistment. Testimony given during plaintiff's discharge hearing indicated that plaintiff and "at least three other people at minimum had access to SGT [Sergeant] Davis' 201 file [Military Personnel Records Jacket]."

geant Bynum approved an extension to plaintiff's enlistment term.

The Administrative Elimination Board unanimously recommended plaintiff's discharge under other than honorable conditions. On April 4, 1986, however, plaintiff received a general discharge under Army Regulation 635–200 ¶ 7–17b(1) (Jan. 15, 1986), which provided for separation for fraudulent entry upon a service member's concealment of prior service. Army regulations at the time defined "fraudulent entry" as "the procurement of an enlistment, reenlistment, or period of active service through any deliberate material misrepresentation, omission, or concealment of information which, if known and considered by the Army at the time of enlistment or reenlistment, might have resulted in rejection. This includes all *disqualifying information requiring a waiver*." Army Regulation 635–200 ¶ 7–17a (Jan. 15, 1986).

Plaintiff's commanding officer at the time of his discharge, Major General Robert B. Solomon, when recommending that plaintiff receive a general, rather than an other than honorable discharge, referenced plaintiff's acknowledgement that he had received the bar. Major General Solomon's recommendation, however, does not reveal the timing of plaintiff's disclosure. The recommendation states:

> Evidence indicates that the soldier acknowledged that he was barred from reenlistment in 1982 under the Qualitative Management Program. He handcarried his records from Germany to Fort Jackson. When he arrived, his records did not indicate a DA-imposed bar and soldier was allowed to extend. Subsequently a MIL-PERCEN [Military Personnel Center] computer listing was furnished to the local personnel office which reflected soldier's barred status and separation action was initiated. . . . Recommend the findings and recommendations of the Administrative Separation Board held on 22 January 1986, be disapproved for an Other Than Honor-

able Discharge and soldier be issued a General Discharge.

Plaintiff filed an application with the ABCMR, which he signed on October 27, 2009, and is stamped November 2, 2009, to correct his military records, alleging that he "was discharged after 21 years of service without any retirement"[3] because he was "wrongfully accused of Fraudulent Entry." Applications to correct military records must be filed within three years of discovering an alleged error, unless the ABCMR finds that it is "in the interest of justice" to excuse a failure to file within the three-year period. *See* 10 U.S.C. § 1552(b) (Supp. II 2008). Plaintiff listed April 4, 1986 as the date he claims to have discovered the alleged error in his application to the ABCMR. Thus, the plain language of the ABCMR's statute of limitations normally would appear to have barred plaintiff's claim. For unexplained reasons, however, the ABCMR indicated that "[w]hile it appears the applicant did not file within the time frame provided in the statute of limitations, the ABCMR has elected to conduct a substantive review of this case and, only to the extent relief, if any, is granted, has determined it is in the interest of justice to excuse the applicant's failure to timely file." The only other comment in the record before the court on the subject of the statute of limitations indicates that the ABCMR cautioned that, "[i]n all other respects, there are insufficient bases to waive the statute of limitations for timely filing" in plaintiff's case. On August 3, 2010, after reviewing plaintiff's application, the ABCMR issued a decision denying plaintiff's request for relief. The ABCMR concluded that: "The applicant extended his service knowing he could not lawfully acquire eligibility for retirement. The applicant's 21 [sic] years of service, a portion of which was fraudulently obtained, is not sufficient justification to automatically qualify him for an honorable 20–year retirement."

On June 10, 2011, based on the record provided to the court, the ABCMR took its

---

3. Although plaintiff asserts that he was discharged after twenty-one years of service, plaintiff's records appear to indicate that he would have achieved twenty years of active service had he not been discharged before the end of his final enlistment term. Plaintiff also indicated in an application for voluntary retirement that he would achieve twenty years and four days of active service by the end of his final enlistment term.

final action with respect to plaintiff's application after construing a letter from a member of Congress inquiring about plaintiff's application, which included an undated enclosure from Mr. Davis, as a request for reconsideration. The enclosure from Mr. Davis alleged that he was wrongfully denied "an honorable 20–year retirement." The ABCMR indicated that he "did not provide new evidence and/or argument with this request." The ABCMR, therefore, returned the request for reconsideration without action, and indicated that plaintiff's case would receive no further review. The ABCMR also informed plaintiff that he had "the option to seek relief in a court of appropriate jurisdiction."

Plaintiff now claims in this court that the decisions of the Administrative Elimination Board and the ABCMR were legally erroneous. He contends that his discharge was unlawful because, at the time of his discharge, he "was in the sanctuary of 10 U.S.C. Section 1176(a) which provides an independently accruing claim for retired pay" because he was within two years of qualifying for retirement. (emphasis removed). Plaintiff cites the current version of Section 1176(a) for this proposition, which provides "[a] regular enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within two years of qualifying for retirement under section 3914 ... of this title ... shall be retained on active duty until the member is qualified for retirement ... unless the member is sooner retired or discharged under any other provision of law." 10 U.S.C. § 1176(a) (2006). The statute at 10 U.S.C. § 3914 also currently provides, and provided on the date of plaintiff's dismissal, that, "[u]nder regulations to be prescribed by the Secretary of the Army, an enlisted member of the Army who

has at least 20, but less than 30, years of service computed under section 3925 of this title may, upon his request, be retired." 10 U.S.C. § 3914 (2006); *see also* 10 U.S.C. § 3914 (1982), *amended by* National Defense Authorization Act for Fiscal Year 1995, Pub.L. No. 103–337, § 515(a), 108 Stat. 2663, 2753 (1994). Plaintiff alleges that the Army violated these provisions when it discharged him "within two years of qualifying for retirement."

In sum, plaintiff seeks retirement pay from June 2, 1986 to the present, "or in the alternative that he be awarded back retired pay as a continuing claim pursuant to 28 U.S.C. Sec. 2501, and for the remainder of his natural life." (emphasis removed). Plaintiff requests that this court order the ABCMR to expunge all references to the hearing before the Administrative Elimination Board from his records and to amend his records to reflect constructive service from April 4, 1986 to, and including, June 1, 1986, which plaintiff argues would allow him to be placed on the rolls of the retired military as of June 1, 1986.

■ In response to plaintiff's claims, defendant moves to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (2012). Defendant argues that plaintiff's claims accrued in 1986 because "the statute of limitation period for wrongful discharge runs from the date of discharge or separation from active duty." Defendant concludes that the applicable statute of limitations bars plaintiff's claims, "even though he sought review by the ABCMR fewer than six years ago." Defendant also contends that plaintiff waived any claims based on procedural deficiencies at plaintiff's discharge hearing because they were not properly raised before the ABCMR.[4] In the alterna-

4. In addition, in plaintiff's response to defendant's motion to dismiss, plaintiff contends that his discharge was not approved by the appropriate authority, an argument not included in plaintiff's complaint or amended complaint filed in this court. Plaintiff argues that "HQDA [Headquarters, Department of the Army] (DAPC–EPA–A–S)" did not approve his discharge as required by Army Regulation 635–200 ¶ 1–21f. Because plaintiff's claims are barred by the applicable statute of limitations, and because plaintiff and

plaintiff's counsel did not raise this issue in the complaint or in the amended complaint filed in this court, the court does not reach the issue. As judges of this court have noted: " '[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' " *Mendez–Cardenas v. United States*, 88 Fed.Cl. 162, 166–67 (2009) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct.

tive, defendant filed a motion for judgment on the administrative record.

In his response to defendant's motion to dismiss, plaintiff answers that the applicable statute of limitations does not bar plaintiff's claims because defendant continually violates applicable sanctuary provisions each month that it withholds his retirement pay, "giving rise to distinct claims." According to plaintiff, "the non payment of retirement results from independently accruing violations of statutes and regulations .... not ... a single distinct event" and, therefore, plaintiff presents the court with a continuing claim that is not barred by the applicable statute of limitations.

## DISCUSSION

 In order to determine whether the statute of limitations presents a jurisdictional bar to plaintiff's claims, the court must ascertain when plaintiff's claims accrued: upon his discharge on April 4, 1986, or at a later time, as alleged by plaintiff. " '[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' " *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). When deciding a case based on a lack of subject matter jurisdiction, this court must first assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139, reh'g *denied*, 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.

Cir.2006); *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).

 The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (Supp. V 2011). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation*, 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009); *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 875 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2007), *cert. denied*, 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir. 1999).

 Suits against the United States are subject to a six-year statute of limitations pursuant to 28 U.S.C. § 2501 (2006). This statute sets an express limitation on the jurisdiction granted to this court under the Tucker Act. *See Martinez v. United States*, 333 F.3d 1295, 1304 (Fed.Cir.2003) (en banc), *cert. denied*, 540 U.S. 1177, 124 S.Ct. 1404,

1758, 84 L.Ed.2d 821 (1985)); *see also Hufford v. United States*, 87 Fed.Cl. 696, 701 (2009) (" 'This court does not possess jurisdiction to hear claims presented for the first time in responsive briefing.' " (quoting *McGrath v. United States*, 85 Fed. Cl. 769, 772 (2009))).

158 L.Ed.2d 76 (2004); *Franconia Assocs. v. United States*, 240 F.3d 1358, 1362 (Fed.Cir. 2001), *rev'd on other grounds*, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1454 (Fed.Cir.1997); *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir. 1990) (citing *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)); *Holloway v. United States*, 60 Fed. Cl. 254, 256 (2004), *aff'd*, 143 Fed.Appx. 313 (Fed.Cir.), *cert. denied*, 546 U.S. 876, 126 S.Ct. 389, 163 L.Ed.2d 173 (2005). The six-year time bar on actions against the United States is jurisdictional, because filing within the six-year period is a condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). *See Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed.Cir.2000), *cert. denied*, 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *Block v. North Dakota ex rel. Bd. of Univ. Sch. Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Martinez v. United States*, 333 F.3d at 1316; *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed.Cir.2002); *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d at 1454; *Holloway v. United States*, 60 Fed.Cl. at 256.

■ Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. at 133–34, 128 S.Ct. 750; *Alder Terrace, Inc. v. United States*, 161 F.3d at 1376–77; *Holloway v. United States*, 60 Fed.Cl. at 256; *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2002); *Entines v. United States*, 39 Fed.Cl. 673, 678 (1997), *aff'd*, 185 F.3d 881 (Fed.Cir.) (unpublished table decision), *cert. denied*, 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *McDonald v. United States*, 37 Fed. Cl. 110, 113 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir.1998) (unpublished table decision). The start date on which to begin the running of a

statute of limitations is "'when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed.Cir.2012) (quoting *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed.Cir.2006)); *see also Martinez v. United States*, 333 F.3d at 1303 ("when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment....'" (quoting *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966))); *Franconia Assocs. v. United States*, 240 F.3d at 1362; *Alder Terrace, Inc. v. United States*, 161 F.3d at 1377; *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988); *Lins v. United States*, 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982), cert. denied, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Oceanic S.S. Co. v. United States*, 165 Ct.Cl. 217, 225 (1964); *Holloway v. United States*, 60 Fed.Cl. at 256. The statute of limitations for a particular plaintiff begins to "run from the date the plaintiff 'knew or should have known of the claim.'" *Oja v. Dep't of Army*, 405 F.3d 1349, 1358 (Fed.Cir.) (quoting *United States v. Beggerly*, 524 U.S. 38, 48–49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)), reh'g and reh'g en banc *denied* (Fed. Cir.2005). A claim's accrual is "'determined under an objective standard'" and a plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. *FloorPro, Inc. v. United States*, 680 F.3d at 1381 (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir. 1995), *cert. denied*, 517 U.S. 1243, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996)).

■ An action seeking compensation for "monetary losses resulting from a wrongful discharge" accrues immediately upon discharge. *Young v. United States*, 529 F.3d 1380, 1383 (Fed.Cir.) (citing *Martinez v. United States*, 333 F.3d at 1310), reh'g *denied* (Fed.Cir.2008), cert. denied, 555 U.S. 1214, 129 S.Ct. 1525, 173 L.Ed.2d 659 (2009); *see also Hurick v. Lehman*, 782 F.2d 984, 986 (Fed.Cir.1986); *Bonen v. United States*, 229 Ct.Cl. 144, 148, 666 F.2d 536, 539 (1981), cert. denied, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Dean v. United States*,

92 Fed.Cl. 133, 144 (2010), aff'd, 416 Fed. Appx. 908 (Fed.Cir.2011), cert. denied, — U.S. ——, 132 S.Ct. 1002, 181 L.Ed.2d 734 (2012); Joseph v. United States, 62 Fed.Cl. 415, 417 (2004); Holloway v. United States, 60 Fed.Cl. at 256. A cause of action for back pay accrues all at once at the time of discharge. See Martinez v. United States, 333 F.3d at 1303; Bowen v. United States, 292 F.3d 1383, 1386 (Fed.Cir.2002); Kirby v. United States, 201 Ct.Cl. 527, 531 (1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); Joseph v. United States, 62 Fed.Cl. at 417. In Martinez v. United States, the United States Court of Appeals for the Federal Circuit stated:

> The service member therefore has the right to sue immediately upon discharge for the funds improperly being withheld. Moreover, the courts have made clear that a Tucker Act claim for back pay accrues all at once at the time of discharge; the claim for back pay is not a 'continuing claim' that accrues each time a payment would be due throughout the period that the service member would have remained on active duty.

Martinez v. United States, 333 F.3d at 1303 (citations omitted).

 A date-of-discharge rule applies to wrongful discharge claimants seeking back pay, whether labeled by plaintiff's counsel as "back pay," "retirement pay," or "back retired pay." In Mr. Davis' case, plaintiff's counsel in his various filings has conflated and alleged entitlement to back pay, retirement pay, and back retirement pay on his client's behalf. The gravamen of plaintiff's complaint and amended complaint, however, is consistently based on the Administrative Elimination Board's decision to discharge plaintiff. The Federal Circuit decisions in Martinez v. United States, 333 F.3d 1295, and Chambers v. United States, 417 F.3d 1218 (Fed.Cir.), cert. denied, 546 U.S. 1066,

126 S.Ct. 807, 163 L.Ed.2d 635 (2005), offered guidance on monetary discharge claims and distinguished back pay or retirement pay from disability retirement pay claims. Both decisions noted that discharge cases under the Military Pay Act, 37 U.S.C. § 204, do not require that the claimant seek administrative review at a Board for Correction of Military Records before filing suit in the United States Court of Federal Claims because review by such military boards of review is permissive, and applicants are not required to exhaust administrative remedies. See Chambers v. United States, 417 F.3d at 1224–25 (" '[S]ince their creation, the correction boards have been regarded as a permissive administrative remedy and … an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.' " (quoting Martinez v. United States, 333 F.3d at 1304)); see also Martinez v. United States, 333 F.3d at 1312 ("The creation of a permissive administrative remedy, either by statute or by regulation, does not affect the time period for which Congress has waived sovereign immunity and permitted judicial relief to be sought."). According to the United States Court of Appeals for the Federal Circuit in Chambers, the difference between claims for unlawful discharge and claims for entitlement to disability retirement pay, "stems from their respective money-mandating statutes," Chambers v. United States, 417 F.3d at 1224, which in wrongful discharge cases is the Military Pay Act, 37 U.S.C. § 204, and in disability retirement cases is 10 U.S.C. § 1201 (Supp. II 2008). Therefore, in plaintiff's discharge-based case, Mr. Davis' claims accrued when all events that fixed plaintiff's pay claims occurred after the Administrative Elimination Board issued its recommendation to discharge plaintiff, and plaintiff received his general discharge on April 4, 1986.[5]

---

5. With regard to disability retirement pay claims, the Federal Circuit wrote in Chambers:

> [I]f at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge. Real [v. United States, 906

F.2d 1557, 1560 (Fed.Cir.1990)]. But where the claimant "has not had or sought a Retiring Board, his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement). Friedman [v. United States, 159 Ct.Cl. 1, 25, 310 F.2d 381,

■ Furthermore, although alleged by plaintiff through his counsel, an action challenging an unlawful discharge, whether seeking back pay, retirement pay, or back retired pay, does not present a continuing claim. The United States Court of Appeals for the Federal Circuit articulated the continuing claim doctrine as follows:

"In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.... However, a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim."

*Wells v. United States*, 420 F.3d 1343, 1345 (Fed.Cir.2005) (omission in original) (quoting *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d at 1456).

The Federal Circuit in *Wells v. United States* also cited the United States Court of Claims case of *Lane v. United States*, which involved a claim for back pay stemming from an allegedly improper discharge from the military. The *Wells* court wrote: "The [Lane] court held that it was barred by the statute of limitations, because the claim 'accrue[d] all at once' upon Lane's discharge and he could not file suit more than six years from that date." *Wells v. United States*, 420 F.3d at 1346 (second bracket in original) (quoting *Lane v. United States*, 208 Ct.Cl. 955, 955–56 (1975)). In contrast, in Wells the Federal Circuit found that the plaintiff had presented a continuing claim after the United States repeatedly violated a statute governing the garnishment of military pensions. See *Wells v. United States*, 420 F.3d at 1347 (agreeing that "each time the government took the 'wrong amount,' ... 'an independent wrong was committed,' and therefore the

continuing claim doctrine should be applicable"); *see also Beer v. United States*, 696 F.3d 1174, 1181, 1186 (Fed.Cir.2012) (en banc) (holding successive statutes blocking "a mechanical implementation of COLAs [cost-of-living adjustments] for judges" presented continuing claims for "unconstitutional diminishments of judicial compensation"). The court distinguished the repeated statutory violations in *Wells* from cases in which the government commits

"one alleged wrong[,] ... which accrued all at once at one point in time, even though it may have had later adverse effects .... such as nonpayment of annuities or wages, [which] were not independently accruing violations of any statutes or regulations in themselves, but rather were merely damages resulting from the single earlier alleged violation by the government...."

*Wells v. United States*, 420 F.3d at 1346 (quoting *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d at 1457); *see also Hart v. United States*, 910 F.2d at 818 (holding claim to survivor benefits accrues upon service member's death, rather than each month benefits are due).

Although plaintiff's amended complaint states that the Army improperly discharged him before what plaintiff alleges was the appropriate retirement date, the rationale for the allegations by plaintiff and plaintiff's counsel appear confused. The complaint and amended complaint filed by plaintiff's counsel rely on "10 U.S.C. Section 1176(a)," but the complaint and amended complaint interchangeably refer to "11 USC 1176(a)," and the response to defendant's motion to dismiss refers to "11 USC 1176," a provision that does not exist in the United States Code. If plaintiff's counsel intended to cite Section 1176(a) of Title 10,[6] plaintiff counsel also errs

---

396 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963) ]."
*Chambers v. United States*, 417 F.3d at 1225 (footnote omitted). This is known as the "first competent board" rule, and was articulated in *Friedman v. United States*, 159 Ct.Cl. at 18, 25, 310 F.2d at 392, 396. *See also Schmidt v. United States*, 3 Cl.Ct. 190, 193 (1983).

6. Although plaintiff's counsel also cites generally to "11 USC 1176" in plaintiff's response to defendant's motion to dismiss, plaintiff's counsel

may have intended to cite the first subsection of Section 1176 of Title 10, rather than Section 1176 in its entirety because the second subsection of Section 1176 is inapplicable to plaintiff. The second subsection, as originally enacted, related to "Reserve Members" and plaintiff was a member of the Regular Army from 1968 to the date of his discharge in 1986. *See* National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, § 541(a), 106 Stat. 2315, 2412–13 (1992). In fact, throughout plaintiff's

in trying to rely on this provision in the amended complaint. As plaintiff's counsel later recognizes in response to defendant's motion to dismiss, Section 1176(a) of Title 10 was promulgated on October 23, 1992, more than six years after plaintiff's discharge from the military. *See* 83 Stat at 2412–13. Section 1176(a) of Title 10, therefore, is inapplicable to plaintiff's claims.

Acknowledging the inapplicability of 10 U.S.C. § 1176(a) to plaintiff's claims, plaintiff's counsel argues instead in plaintiff's response to defendant's motion to dismiss that the basis for plaintiff's claims is "AR [Army Regulation] 635–200 as codified by 10 USC 1163 and subsequently in 10 USC 1176(a) and applicable regulations." (footnotes omitted). Plaintiff's counsel states:

> Plaintiff has not been able to locate the statutory language/ legislative history of 10 USC 1163 (the 18 year "sanctuary" or "lock in") which he believes is the basis for AR 635–200, para 1–21(f), effective 1 October 1982 and which requires approval of HQDA (DAPC–EPA–A–S) prior to releasing a service member from active duty who is in the "sanctuary" prior to retirement. The "sanctuary" statute also forms the basis for Interim Change to AR 635–200, effective 9 Sep 1983, para 12–5(3)(f).

Plaintiff's counsel seems to suggest that Army Regulation 635–200 and 10 U.S.C. § 1163 should entitle plaintiff to the same sanctuary as is provided for in 10 U.S.C. § 1176(a) to "[a] regular enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within two years of qualifying for retirement. . . ." 10 U.S.C. § 1176(a) (2006).

The statute at 10 U.S.C. § 1163 is similarly inapplicable to plaintiff's claims because it provided, before its repeal, that "a member of a *reserve component* who is on active duty and is within two years of becoming eligible for retired pay . . . may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary." (emphasis added). *See* Act of Sept. 7, 1962, Pub.L. No. 87–651, § 106(a), 76 Stat. 506, 508 (repealed 1994). Although plaintiff was briefly a member of the Army Reserve in 1967, he returned to the Regular Army in 1968 and remained in the Regular Army until the date of his discharge in 1986. The statute, therefore, cannot serve as the basis for plaintiff's claims because plaintiff was not a member of the Army Reserve during the two years prior to the date of his discharge.

In his presentation to the court on behalf of his client, plaintiff's counsel also cites an outdated version of Army Regulation 635–200 ¶ 1–21f (Jan. 15, 1986), and misquotes subsections "e(3)" and "f" of Army Regulation 635–200 ¶ 12–13 (Sep. 9, 1983), when referring to *"Interim Change* to AR 635–200, effective, 9 Sep 1983, para 12–5(3)(f) [sic]." [7] At the time of plaintiff's discharge, Army Regulation 635–200 ¶ 12–13 (Jan. 15, 1986), titled "Preparation of DA [Department of the Army] Form 2339," which was to be prepared by "[e]ach member requesting retirement," provided:

> *e.* The personnel officer will insure [sic] that the member's enlistment does not expire before the requested retirement date. If the enlistment will expire before requested date of, or eligibility for, voluntary retirement, the retirement approval authority may extend it through the last day of the month preceding the requested retirement date. Enlistment will not be extended more than 12 months. . . . For example:
>
> > (3) Members who, at ETS [expiration term of service], will have completed 18 years of active Federal service, but less than 20 years, may be extended to reach retirement eligibility. . . .
>
> *f.* Persons who receive a DA-imposed bar to reenlistment may be extended to com-

---

filings in this court, plaintiff's counsel not only incorrectly cites statutes and regulations, but also mischaracterizes relevant legal authorities.

7. The error of plaintiff's counsel appears to stem partially from a notation in an interim change to paragraph 12–13 of Army Regulation 635–200 (Oct. 1, 1982) that cited *"Page 12–5"* as the location of paragraph 12–13. *See* Interim Change, Army Regulation 635–200, at 3 (Sept. 9, 1983) (emphasis in original).

343

plete 20 years of service per AR 600–200, paragraph 4–15.

Army Regulation 635–200 ¶¶ 12–13e(3), 12–13f (Jan. 15, 1986).

The timely, applicable Army Regulation 600–200 ¶ 4–15 provided:

> A soldier who has received a DA-imposed bar to reenlistment *may* be extended as follows:
>
> a. A soldier who has completed 18 or more years of active Federal Service on the effective date of the DA bar to reenlistment letter *may* be extended to reach retirement eligibility.
>
> b. A soldier who has less than 18 years of active Federal Service and less than 18 months remaining on the current term of service *may* be extended for a period of time sufficient to allow 18 months from the date of the bar....

Army Regulation 600–200 ¶ 4–15 (Jan. 15, 1986) (emphasis added). In addition, Army Regulation 635–200 ¶ 1–21f provided at the time of plaintiff's discharge that, "[a]ny member who has completed 18 or more years of active Federal service will not be discharged without approval of HQDA (DAPC–EPA–A–S)...." Army Regulation 635–200 ¶ 1–21f (Jan. 15, 1986).[8] Plaintiff's counsel asserts that these "sanctuary" provisions should have entitled plaintiff to remain on active duty until he was eligible for retirement.

Plaintiff's counsel further argues that the failure to pay plaintiff retired pay each month after his discharge gives rise to "an independently accruing continuing claim for retired pay." Although plaintiff's counsel would have the court view the Army's alleged violation of the sanctuary provisions as a continuing claim, regardless of whether Army Regulation 635–200 ¶¶ 1–21, 12–13 could allow the extension of plaintiff's term of service, the regulation does not grant plaintiff a right to monthly retired pay as a continuing claim. Service members are not automatically entitled to retirement after twenty years of service. *See* 10 U.S.C. § 3914 (1982) ("Under regulations to be prescribed by the Secretary of the Army, an enlisted member of the Army who has at least 20, but less than 30, years of service ... *may*, upon his request, be retired." (emphasis added)); *see also West v. United States*, 103 Fed.Cl. 55, 61 (2012) ("[A] soldier with 20 years of service but less than 30 years is not guaranteed the right to 'retired' status in the military."). Moreover, Army Regulation 600–200 % 4–15 (Jan. 15, 1986), as incorporated by reference into Army Regulation 635–200 % 12–13f (Jan. 15, 1986), appears not to apply to plaintiff because plaintiff received notice of his bar to reenlistment on April 27, 1982, before plaintiff "completed 18 or more years of active Federal Service," and not "less than 18 months" before the original expiration of plaintiff's term of service on September 28, 1985. *See* Army Regulation 600–200 ¶¶ 4–15a, 4–15b (Jan. 15, 1986). Based on Army Regulation 635–200, plaintiff could not violate his bar to reenlistment and then enjoy the benefit of the sanctuary provisions.

██ The court concludes that the applicable statute of limitations bars plaintiff's claims because plaintiff's claims, whether characterized as "back pay," "retirement pay," or "back retired pay," are ultimately based on the Administrative Elimination Board's decision to discharge plaintiff. The continuing claim doctrine does not apply to plaintiff's claims because plaintiff has presented the court with a single distinct event, although with later adverse effects. Plaintiff's claims accrued on the date of his discharge, April 4, 1986, more than twenty-six years before he filed the present complaint and outside the six-year window in which to file a claim.[9]

██ As a final matter, this court has no jurisdiction over plaintiff's claim that ir-

---

8. Army Regulation 635–200 ¶ 1–21f (Jan. 15, 1986) is now located, in slightly altered form, at Army Regulation 635–200 ¶ 1–19f (Sept. 6, 2011).

9. In addition, the court notes that even if plaintiff had presented a continuing claim, plaintiff would be unable to recover retired pay for every month after plaintiff's discharge from the military on April 4, 1986 because continuing claims are still subject to the six-year statute of limitations. *See Beer v. United States*, 696 F.3d at 1186–87; *Wells v. United States*, 420 F.3d at 1348.

regularities in his discharge hearing denied him due process of law. The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997) (citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); *see also In re United States*, 463 F.3d 1328, 1335 n. 5 (Fed.Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), *reh'g and reh'g en banc denied* (Fed.Cir.2006), *cert. denied*, 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1334 (Fed.Cir. 2006); *Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g *denied* (Fed.Cir. 1995); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that the Fifth Amendment's Due Process clause does not include language mandating the payment of money damages); *Harper v. United States*, 104 Fed.Cl. 287, 291 n. 5 (2012); *Hampel v. United States*, 97 Fed.Cl. 235, 238, *aff'd*, 429 Fed.Appx. 995 (Fed.Cir.2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1105, 181 L.Ed.2d 973 (2012); *McCullough v. United States*, 76 Fed.Cl. 1, 4 (2006), *appeal dismissed*, 236 Fed.Appx. 615 (Fed.Cir.), *cert. denied*, 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007) ("[N]either the Fifth Amendment Due Process Clause ... nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Although plaintiff's counsel is not specific as to which due process constitutional provision plaintiff alleges was violated, counsel's lack of specificity is irrelevant because this court does not have jurisdiction to review due process claims un-der either the Fifth or Fourteenth Amendments to the United States Constitution. Therefore, to the extent that plaintiff raises allegations of violations of due process, no cause of action alleging a violation of due process can be brought in this court. Due process claims "must be heard in District Court." *Kam–Almaz v. United States*, 96 Fed.Cl. 84, 89 (2011) (citing *Acadia Tech., Inc. v. United States*, 458 F.3d at 1334), *aff'd*, 682 F.3d 1364 (Fed.Cir.2012); *see also Hampel v. United States*, 97 Fed.Cl. at 238.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is **GRANTED** based on the failure of plaintiff to file his claims in this court within the applicable statute of limitations time period. Defendant's alternative motion for judgment on the administrative record, therefore, is **MOOT**. Plaintiff's complaint is **DISMISSED,** and the Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**